[No. 22228. *En Banc.* June 12, 1930.]

ABERDEEN SAVINGS & LOAN ASSOCIATION et al., *Appellants,* v. SAMUEL H. CHASE et al., *Respondents.*[1]

[1]Reported in 289 Pac. 536; 290 Pac. 697.

352

*Grinstead, Laube, Laughlin & Lichty* and *Henderson, Carnahan & Thompson,* for appellants.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondents.

*William Hatch Davis* and *John H. Powell, amici curiae.*

*Arthur G. Cohen* and *Lester M. Livengood, amici curiae* on rehearing.

BEALS, J.—Plaintiff Aberdeen Savings & Loan Association and sixty-two other savings and loan associations, doing business in this state and organized under the provisions of chapter 1, title XXI, Rem. Comp. Stat., § 3716 *et seq.,* and acts amendatory thereto, brought this action against the members of the state

tax commission, seeking to enjoin the enforcement as against plaintiffs of chapter 151, Laws of 1929, p. 380, providing for a tax, measured by income, upon banks and financial corporations, plaintiffs praying in the alternative for relief against certain alleged threatened illegal applications of the act by defendants.

To plaintiffs' complaint, defendants demurred. The demurrer having been sustained by the trial court, plaintiffs elected to stand upon their complaint, and from a judgment dismissing the action, they appeal.

In their complaint, appellants allege that, prior to the convening of the legislature in January, 1929, the system of taxation which had theretofore been in effect in this state had been seriously affected by litigation which had been instituted by certain of the railroad and banking corporations for the purpose of procuring relief against alleged excessive, unjust and discriminatory taxes levied against their respective properties, which litigation threatened to seriously impair the revenues of the state and also of the counties and other municipal corporations. Appellants quote at length from the messages of the Governor to the state legislature, and set forth certain proceedings of the legislature, had with a view to some readjustment of the laws having for their object the raising of revenue.

Chapter 151, Laws of 1929, p. 380, against which act this attack is waged, attempts to provide, as expressed in its title, "for a tax measured by income upon banks and financial corporations;" provides for the assessment and collection thereof and for certain offsets or deductions to be considered in determining the amount of taxes due from institutions liable to pay the same. Corporations organized to do "a savings and loan or building and loan" business are expressly named in the act as subject to the provisions thereof. The terms

"gross income," "net income" and "financial corporation" are in the act defined as follows:

"The term 'gross income,' as herein used, includes gains, profits and income derived from business of whatever kind and in whatever form paid; gains, profits or income from dealings in real or personal property; gains, profits or income received as compensation for services, as interest, rents, commissions, brokerage or other fees or otherwise received in carrying on such business; all interest received from Federal, state, municipal or other bonds, and, except as hereinafter otherwise provided, all dividends received on stocks; Provided, That the premium income of insurance companies shall not be included in gross income.

"If the gross income is derived from business done in part within and part without the state of Washington, gross income means that portion of the income derived from business done within this state, to be ascertained and allocated in such manner as will fairly determine the gross income derived from business done within the state. The commission shall have power to prescribe such rules and regulations as will, in its opinion, carry out the direction and detail of this provision.

"The term 'net income,' as herein used, means the gross income less the deductions allowed. . . .

"The term 'financial corporation' shall include any corporation, other than a bank, engaged within the state of Washington in the business of acting in any representative or trust capacity; or in the business of a savings and loan or building and loan society or association; industrial loan company, or finance company; or in the business of buying, selling, discounting, or dealing in stocks, bonds, debentures, bills of exchange, warrants, notes and/or other evidences of debt; or in the loaning, collecting and reloaning of money."

After the section of the act containing definitions of the terms therein used, the act continues:

"Sec. 2. Every national banking association, located or doing business within this state, shall annually pay

to the state, in addition to all other taxes or charges, a tax according to or measured by its net income, to be computed in the manner hereinafter provided, at the rate of five per cent upon the basis of its net income for the next preceding fiscal or calendar year.

"Sec. 3. Every bank, other than a national banking association, doing business within this state, shall annually pay to the state, in addition to all other taxes or charges, for the privilege of exercising its corporate franchise within this state, a tax according to or measured by its net income, to be computed in the manner hereinafter provided, at the rate of five per cent upon the basis of its net income for the next preceding fiscal or calendar year.

"Sec. 4. Every financial corporation doing business within this state shall annually pay to the state, in addition to all other taxes or charges, for the privilege of exercising its corporate franchise within this state, a tax according to or measured by its net income, to be computed in the manner hereinafter provided, at the rate of five per cent upon the basis of its net income for the next preceding fiscal or calendar year.

"Sec. 5. If the entire business of a bank or corporation is done within this state the tax shall be based upon its entire net income; and if the entire business of such bank or corporation is not done within this state the tax shall be based upon that portion thereof which is derived from business done within this state, as herein provided. . . .

"Sec. 24. The commission shall between the first day of May and the first day of July in each calendar year, from the reports filed with it or from other information in its possession, determine the net income of each bank and corporation as the basis of computing the tax provided for in this act. Such basis shall not be increased beyond the amount of net income shown by the taxpayer's return unless the commission shall give ten days' notice in writing by registered mail to the taxpayer of the amount to which it is proposed to increase such basis of computation, and of the time and place when and where such taxpayer will be heard by the commission in opposition to such proposed increase.

"Sec. 25. The commission shall on or before the first day of September next thereafter prepare and transmit to the assessor of each county within the state an assessment roll for such county and shall place upon such assessment roll the name of each bank and corporation liable to a tax for the taxable year for which such assessment roll is prepared, and having its principal office or place of business within the county for which such assessment roll is prepared.

"The commission shall also enter upon such assessment roll opposite to or in connection with the name of each bank or corporation the name or designation of the city, town, township, school district and other taxing districts within said county in which said taxpayer has its principal office or place of business together with the net income or basis for the computation of the tax as determined by the commission and the amount of the tax due and payable as computed by it.

"The assessor of such county shall enter upon the tax rolls of the county the name of each bank and corporation and the amount of such tax due from it as shown by such assessment roll. . .

"Sec. 27. All taxes collected or paid under the provisions of this act shall be for the use of the state and of the county, city, town, school district, municipality or other taxing district in which the bank or corporation has its principal office or place of business and shall be by said county treasurer distributed in the manner and in the same proportions as provided by law for the distribution of taxes upon personal property."

Appellants contend that the act of the legislature which they attack in this proceeding violates the constitution of the United States and the constitution of the state of Washington. Constitutional provisions upon which appellants rely are the following:

Constitution of the United States, article I, § 10, paragraph 1:

"No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal;

coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts; pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts; or grant any title of nobility.''

Fourteenth amendment to the constitution of the United States, § 1:

''All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.''

Article VII of the constitution of the state of Washington, § 2:

''The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe such regulation by general law as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property: Provided, that a deduction of debts from credits may be authorized: Provided, further, that the property of the United States, and of the state, counties, school districts, and other municipal corporations, and such other property as the legislature may by general laws provide, shall be exempt from taxation.''

Article VII of the constitution of the state of Washington, § 9:

''The legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes

shall· be uniform in respect to persons and property within the jurisdiction of the body levying the same.''

Article XI of the constitution of the state of Washington, § 12:

''The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but· may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.''

■ Appellants, in the first place, argue that the act of which they complain violates the fourteenth amendment to the constitution of the United States in that it denies to appellants the equal protection of the laws.

The supreme court of the United States has held that a corporation is a person within the contemplation of the constitution. *Smyth v. Ames,* 169 U. S. 466; *Southern R. Co. v. Greene,* 216 U. S. 400; *Quaker City Cab Co. v. Pennsylvania,* 277 U. S. 389.

In discussing the ''equal· protection'' clause of the constitution, the supreme court in the case of *Strauder v. West Virginia,* 100 U. S. 303, said:

''The Fourteenth Amendment makes no attempt to enumerate the rights it· designed to protect. It speaks in general terms, and those are as comprehensive as possible. Its language is prohibitory; but every prohibition implies the existence of rights and immunities, prominent among which is an immunity from inequality of legal protection, either for life, liberty, or property.''

In the later case of *Barbier v. Connolly,* 113 U. S. 27, the supreme court used this language:

''The Fourteenth Amendment . . . undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spolia-

tion of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses.''

A discussion of these principles is also found in the case of *Atchison, Etc., Railroad Co. v. Matthews,* 174 U. S. 96, as follows:

''The equal protection guaranteed by the Constitution forbids the legislature to select a person, natural or artificial, and impose upon him or it burdens and liabilities which are not cast upon others similarly situated. It cannot pick out one individual, or one corporation, and enact that whenever he or it is sued the judgment shall be for double damages, or subject to an attorney fee in favor of the plaintiff, when no other individual or corporation is subjected to the same rule. Neither can it make a classification of individuals or corporations which is purely arbitrary, and impose upon such class special burdens and liabilities. Even where the selection is not obviously unreasonable and arbitrary, if the discrimination is based upon matters which have no relation to the object sought to be accomplished, the same conclusion of unconstitutionality is affirmed.''

The allegations of appellants' complaint, which of course stand admitted by respondents' demurrer, include statements to the effect that over 300,000 per-

sons are interested as shareholders in the savings and loan associations doing business in this state, the average holding of each shareholder being approximately $350. Appellants further allege that approximately ninety per cent of the gross income of each of the appellants is derived from interest paid on loans secured by first mortgages on improved real estate, and that, in purchasing or making such mortgages, appellants, in the terms which they can offer, come into competition with other corporations as well as with many private persons who are also making such loans within this state. It is, of course, evident that the rate of interest borne by the loans made or purchased by appellants is an important element to be considered in connection with the ability of appellants to secure safe and desirable loans.

Appellants also allege that the minimum rate of return paid by them to their shareholders is five per cent per annum, and that the average rate of return is five and sixty-five hundredths per cent, and that the rate of return cannot be generally reduced below the latter figure without material and serious detriment to their business and to the securing by them of adequate funds with which to transact their business. Appellants argue that, as the competition in loaning money between them, on the one hand, and other corporations and private parties, on the other, is keen, a tax of five per cent upon their net income constitutes a substantial burden upon them, which, in view of the fact that no such tax is paid by private parties or some other competing corporations, deprives them of the benefit of the "equal protection" clause of the constitution and renders the law of which they here complain unconstitutional and void.

Appellants also allege that, under this law, the banks doing business within the state of Washington

would pay a tax at the rate of $0.57 per thousand dollars of resources, whereas appellants and other similar associations in the state would pay an aggregate tax equal to $2.46 per thousand dollars of resources.

The question of whether or not the act which we are now considering imposes a tax upon appellants for the privilege of exercising their corporate powers within this state, or whether, on the other hand, it purports to impose a tax directly upon property, to wit, upon the net income earned by appellants upon which the amount of tax due is to be computed, or upon the occupation with which appellants are engaged, is important. Respondents do not seriously contend that a tax of like general nature to that which we are now considering can be lawfully levied directly upon appellants' property, which is equivalent to the levy of such a tax upon the net income earned by appellants, or that such a tax can be levied upon the occupation of doing a financial business. Respondents contend that the act imposes a franchise privilege tax upon the corporations included within its terms, to be paid by them for the privilege of exercising corporate powers.

In the case of *Quaker City Cab Co. v. Pennsylvania*, 277 U. S. 389, it appeared that the cab company (the plaintiff in error) was a New Jersey corporation, authorized to do business in Pennsylvania and carry on therein a general taxicab business. The state of Pennsylvania sought to collect a tax of eight mills upon the dollar upon the gross receipts of the corporation. The cab company was, in its business, subject to competition by individuals who were also operating taxicabs. To these the act did not apply, and they paid no tax upon their receipts. Corporations operating taxicabs were not exempted from any of

the taxes imposed upon natural persons engaged in the same business, and every such corporation, whether domestic or foreign, paid a capital stock tax and another tax on the par value of all stock issued, if a domestic corporation, and, if a foreign corporation, a like rate on its capital employed in Pennsylvania. The court, speaking through Mr. Justice Butler, says:

"Plaintiff in error is entitled in Pennsylvania to the same protection of equal laws that natural persons within its jurisdiction have a right to demand under like circumstances. *Kentucky Finance Corporation v. Paramount Exch.,* 262 U. S. 544, 550. The equal protection clause does not detract from the right of the state justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, 'but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation.' *Power Co. v. Saunders,* 274 U. S. 490, 493. . . .

"There is no controversy as to the application of the tax. Plaintiff in error assumes that the section covers its gross receipts, as held by the state court, but insists that the section is invalid because it does not extend to like receipts of natural persons and partnerships. No doubt there are situations in which, as appears in *Cudahy Packing Co. v. Minnesota,* 246 U. S. 450, and other cases, a percentage of gross earnings may be taken as a tax on property used in the business and properly may be deemed not to be a tax or burden on such earnings. But the practical operation of the section is to be regarded, and it is to be dealt with according to its effect. *Frick v. Pennsylvania,* 268 U. S. 473. *Panhandle Oil Co. v. Mississippi,* 277 U. S. 218. Here the tax is one that can be laid upon receipts belonging to a natural person quite as conveniently as upon those of a corporation. It is not peculiarly applicable to corporations as are taxes on their capital stock or franchises. It is not taken in

lieu of any other tax or used as a measure of one intended to fall elsewhere. It is laid upon and is to be considered and tested as a tax on gross receipts; it is specifically that and nothing else.

"In effect § 23 divides those operating taxicabs into two classes. The gross receipts of incorporated operators are taxed while those of natural persons and partnerships carrying on the same business are not. The character of the owner is the sole fact on which the distinction and discrimination are made to depend. The tax is imposed merely because the owner is a corporation. The discrimination is not justified by any difference in the source of the receipts or in the situation or character of the property employed. It follows that the section fails to meet the requirement that a classification to be consistent with the equal protection clause must be based on a real and substantial difference having reasonable relation to the subject of the legislation. *Power Co. v. Saunders, supra.* No decision of this court gives support to such a classification. [And the supreme court of Pennsylvania has condemned such a classification. *Schoyer v. Comet Oil & Refining Co.*, 284 Pac. 189, 196-197.] In no view can it be held to have more than an arbitrary basis."

The court held that the law, as construed and applied by the supreme court of Pennsylvania, violated the constitution of the United States, and that the tax could not be sustained.

Respondents contend that the tax provided for by the statute is technically an excise for the privilege of doing business as a corporation, or what is generally known as a corporate franchise tax. For the purposes of this opinion, we assume that a tax by way of an excise to be collected by the state for the exercise of corporate privileges would be valid. The act itself, in §§ 3 and 4, contains a recital that the tax is to be paid by each corporation liable thereto "for the privilege of exercising its corporate franchise within this

state." Such a legislative declaration is to be carefully considered by the courts and due weight given thereto. Courts should, however, in construing an act containing such a declaration, consider the true operation and effect of the law which must be dealt with on the basis of the practical results which follow its operation, and not alone by legislative declarations contained therein.

In this connection, the following opinions of the supreme court of the United States are pertinent: *Craig v. Missouri,* 4 Peters (U. S.) 410; *Mugler v. Kansas,* 123 U. S. 623; *Louisville Gas & Electric Co. v. Coleman,* 277 U. S. 32; *St. Louis Cotton Compress Co. v. Arkansas,* 260 U. S. 346; *Postal Tel. & Cable Co. v. Taylor,* 192 U. S. 64; *Macallen v. Massachusetts,* 279 U. S. 620.

The tax here sought to be levied is, as was stated by the supreme court of the United States in the case of *Quaker City Cab Co. v. Pennsylvania,* as above quoted:

". . one that can be laid upon receipts belonging to a natural person quite as conveniently as upon those of a corporation. It is not peculiarly applicable to corporations as are taxes on their capital stock or franchises. It is not taken in lieu of any other tax or used as a measure of one intended to fall elsewhere. It is laid upon and is to be considered and tested as a tax on gross receipts; it is specifically that and nothing else."

The law of Pennsylvania providing for taxation of taxicab companies, which was being construed by the supreme court in the case last cited, provided for a tax upon gross receipts, while the statute now before us provides for a tax upon net income, but we can see no distinction in principle in this particular between the two acts. In our opinion, the principles upon

which the supreme court of the United States held the statute of the state of Pennsylvania unconstitutional, are extremely pertinent here.

■ Assuming, as we do, for the purposes of this opinion, that the state can fix any excise or franchise fee or tax which must be paid by corporations organized under the laws of this state, we must, nevertheless, note that this act operates only when the corporate privilege to do business is exercised. It is the engaging in business, or the exercise of the corporate privilege, which causes the tax to attach, and it is the business in which the corporation engages which brings the corporation in competition with other persons, natural or artificial, in the carrying on of which every person is entitled to the equal protection of the laws in accordance with the mandate of the Federal constitution.

■ Appellants rely on the opinion of the supreme court of the United States in the case of *Macallen Co. v. Massachusetts,* 279 U. S. 620, in which an opinion of the supreme judicial court of Massachusetts, holding constitutional a law of that state providing for the payment by Massachusetts business corporations of an annual payment by way of an excise, was reversed and the law held unconstitutional. The statute of Massachusetts which was attacked required, among other things, the payment of "an amount equal to two and one-half per cent of that part of its net income, as defined in this chapter, which is derived from business carried on within the commonwealth." The law had, at one time, exempted from the net income upon which the tax should be computed, interest upon bonds, notes and certificates of indebtedness of the United States, but by amendment this exemption was deleted and no deduction of such interest in computing the net income

was provided for. In considering the questions presented, the supreme court says:

"The words of the act and the opinion of the state court as to the nature of the tax are to be given consideration and weight; but they are not conclusive. As it many times has been decided, neither state courts nor legislatures, by giving the tax a particular name, or by using some form of words, can take away our duty to consider its nature and effect. *Choctaw & Gulf R. R. v. Harrison*, 235 U. S. 292, 298; *Galveston, Harrisburg, etc. Ry. Co. v. Texas*, 210 U. S. 217, 227. And this court must determine for itself by independent inquiry whether the tax here is what, in form and by the decision of the state court, it is declared to be, namely, an excise tax on the privilege of doing business, or, under the guise of that designation, is in substance and reality a tax on the income derived from tax-exempt securities. If, by varying the form—that is to say, if, by using one name for a tax instead of another, or imposing a tax in terms upon one subject when another is in reality aimed at—the substance and effect of the imposition may be changed, constitutional limitations upon powers of taxation would come to naught. The rule is otherwise."

The court assumes, as a controlling principle, that the state cannot tax the instrumentalities or bonds of the United States, while on the other hand the state is at liberty to tax corporations with respect to the doing of business. Holding that the state cannot tax the income of a corporation derived from nontaxable securities, the court says:

"It necessarily follows that the legislature may not, by an artful use of words, deprive this court of its authority to look beyond the words to the real legislative purpose. And the power and the duty of the court to do so is of great practical importance. For when the aim of the legislature is simply to tax the former, it is less likely to impose an injurious burden upon the latter than when the aim is directed primarily against the latter."

The court concluded that the amended act imposed a tax upon Federal bonds and securities, and was therefore void.

The opinion of the supreme judicial court of Massachusetts was filed during the month of September, 1928, prior to the enactment of the law now before us, while the opinion of the supreme court of the United States last referred to was not filed until May, 1929. Counsel for respondents endeavor to distinguish the case of *Macallen v. Massachusetts, supra,* but we are unable to follow counsel in their argument.

On behalf of respondents, it is argued that the ruling in the *Macallen* case was based wholly on the fact that the court felt constrained to hold that the real object and purpose of the Massachusetts act was to impose a tax upon governmental tax-exempt securities. It is true, as above stated, that the act, as originally passed, provided that interest upon such securities should be deducted in determining the net income upon which the tax should be computed, and that a special tax commission appointed to consider the tax situation in Massachusetts made a report in which it recommended that the law be amended by disallowing this exemption, and that the legislature thereupon passed an amendatory act following the suggestion of the commission, thereby distinctly indicating a change of policy on the part of the state. In its opinion, the supreme court of the United States refers to this action on the part of the legislature as indicating an express purpose to subject governmental tax-exempt securities to the burden of the tax, and states "that the amended act in substance and effect imposed a tax upon Federal bonds and securities." It is, of course, true that these remarks of the supreme court were clearly warranted by the facts before it, but we are

unable to see that this makes any difference in the principle involved.

The act of the legislature of this state now under consideration was enacted after the passage of the amended act by the Massachusetts legislature, and after that act had been held constitutional by the supreme judicial court of that state. No act of any similar nature existed in this state prior to the passage of the statute of 1929, and we cannot imagine that it could be held that the amended act of Massachusetts was unconstitutional, in so far as it affected Federal tax-exempt securities, and that the act of this state could be held good in that particular, simply because, prior to the enactment of the 1929 statute, no law of similar purport had existed in this jurisdiction.

It is true that the primary purpose of the legislature of Massachusetts, in passing the amendatory act, may have been to procure for the state, as part of its revenue, a proportion of the interest paid to Massachusetts corporations by the United States on governmental securities, while nothing in the record now before us indicates that such was the *primary* purpose of the legislature of this state in enacting the 1929 law. But this again makes no difference in the principle involved, which is identical in both instances. It is, of course, true, as argued on behalf of respondents, that the supreme court of the United States did not hold that a state cannot tax the corporate privilege and measure the tax by net income, the court expressly saying that "the state is at liberty to tax a corporation with respect to the doing of its business." The court continues, however, by saying that "the state cannot tax the income of the corporation derived from non-taxable securities."

The legislature, in enacting such a statute as that now before us, must be held to have primarily intended

all the major consequences of the act, and we are clearly of the opinion that, under the ruling of the supreme court in the case of *Macallen v. Massachusetts, supra,* the law of 1929 unlawfully attempts to levy a tax upon governmental securities, which, under the law of the United States, the state has no right or power to tax.

Appellants, in their complaint, allege that respondents, in preparing to administer the law, refused to allow appellants to make any deductions on account of payments made to their members or shareholders for the use of the money of such members on deposit with appellants, while allowing banks to make deductions as to all interest paid by them.

This matter is argued at length and we have carefully examined the authorities cited. It is, of course, true that banks, in paying interest upon their savings or time deposits, pay according to an agreed rate, while appellants, in crediting their members or shareholders with dividends, do not make such credits on any contract rate, but adjust them upon the basis of corporate earnings. The full amount of the deposits and credited dividends are subject at all times to withdrawal by the member (subject, of course, to the rules of the savings bank as to the giving of notice, when required), the principal sum deposited being nowise subject to any hazard or risk, the element of speculation attending only the dividends which may or may not be earned from the funds deposited by the shareholders. The fundamental relation between the member and the depositee is always that of debtor and creditor, and the payments or dividends, when paid, for the purposes of an act such as that now before us, would seem to partake well nigh exactly of the nature of interest paid by a bank upon money deposited with it. For some purposes, indeed, the two propositions

are entirely different, while considered from other angles they are practically identical.

There is, of course, a great difference between the corporate structure of a savings and loan association and that of a commercial bank, and the word "depositor;" when used in reference to a commercial bank, imports in law a different meaning from that which the word implies when used in connection with a savings and loan association, as, in the latter case, money placed by the depositor in the association is, to a great extent at least, capital for investment for the depositor's benefit, such deposits being, as stated by the supreme court of the United States in the case of *Bank of Redemption v. Boston,* 125 U. S. 60, "the only capital which is invested and employed."

Respondents argue that, as the purpose of the act is the production of revenue, and that, if the distributions made by mutual savings banks and financial corporations of a similar nature are held to be deductible, there will be little revenue raised from such institutions. This is probably true, but that fact has only incidental bearing upon the determination of the important question which we are now discussing.

We have examined the authorities cited in the brief of *amici curiae* to the effect that a depositor in a savings and loan association is not always considered strictly a creditor of the institution, and that such depositor bears a relation to the institution entirely different from that of a depositor in a commercial bank. These authorities support the propositions advanced in the brief, but are not controlling here. We have also considered the opinions of the supreme court of the United States in the cases of *Savings Bank of Danbury v. Loewe,* 242 U. S. 357, and *Cary v. Savings Union,* 89 U. S. 38.

*Amici curiae* argue that interest, to be deductible,

must be paid by the taxpayer, and that distributions to appellants' shareholders out of their own money cannot be considered deductible interest paid for the use of money borrowed from others. This argument apparently works both ways, as it would seem that a savings association should not be taxed upon the business which it does with its shareholders' money, if it is allowed no credit for what it pays the shareholders for the use of that money. Such a law as this should be construed consistently. If the money deposited in savings associations belongs at all times to the shareholders, then the only net income earned by the association is its profit, and the dividends credited to the shareholders are their income, not that of the company, while, if the income of the institution includes the money credited as dividends, the corporation, in computing its net income, should be allowed credit for dividends paid; otherwise the equation is unequal.

After careful consideration, we are of the opinion that appellants, under any law similar to that now under consideration, would be entitled, in computing the net income upon which they are to pay a tax, to some credit on account of dividends paid to members.

Appellants argue that the primary purpose of this act was to tax national banks, and that state banks and other financial corporations were included within the purview of the act because of a supposed necessity for their inclusion by reason of § 5219, U. S. Rev. Stat. (12 U. S. C. A., § 548), by which Congress vested the state legislatures with the power, within certain defined limitations, of taxing shares of national banking associations or the net income earned by such associations, or taxing them according to, or measured by, their net income, subject to the limitations set forth in the section of the Revised Statutes above referred to.

It is, of course, true that a state cannot tax a national bank without authority from Congress, and then only strictly according to the terms of the authority granted, because such banks are agencies of the United States, created by and acting under the constitution and laws of the Federal government to promote governmental purposes. *First National Bank of Guthrie Center v. Anderson,* 269 U. S. 341; *Owensboro National Bank v. City of Owensboro,* 173 U. S. 664.

The authority of the state, then, to levy such a tax as this upon the net income of, or according to, or measured by, the net income of, a national bank, is not a tax upon the corporate franchise of such an institution, but would be a special tax to be levied strictly in accord with the act of Congress above referred to. This distinction is recognized in words by the act now before us for consideration (§§ 2, 3 and 4 of the act of 1929, *supra*), which recites that, as to national banks, the tax provided for thereby is a tax according to, or measured by, the net income of such institutions, while, as to every other bank and every financial corporation doing business within this state, the tax, in exactly the same amount, levied in the same way, is a franchise privilege (or excise) tax.

Respondents argue that, even though the act should be held unconstitutional in so far as it purports to levy a tax upon the net income of national banks, such a holding would not necessarily invalidate the act, as the paragraph providing for the levy of such a tax against national banks could be deleted from the act without impairing the other features thereof. Assuming, without deciding, that the result of a decision that the section providing for the levy of a tax against the net income of national banking associations was void would simply be the deletion of the section of the act establishing such tax, and in view of the importance of

the questions involved, the length to which this opinion is necessarily extended, and the result which we have reached, we do not at this time pass upon the validity of the act in so far as the same purports to levy a tax upon the net income of national banks.

Respondents and *amici curiae* argue ably and at length upon all phases of this litigation. They cite many authorities, some of which clearly sustain respondents' position. We have read the texts and cases relied upon by respondents, and, after thoughtful consideration, are of the opinion that the opinions of the supreme court of the United States above referred to lay down the better rule, and are, indeed, controlling upon the phases of this litigation in regard to which they are respectively relevant.

The matters presented on this appeal are of great and far-reaching importance. Bearing in mind, on the one hand, the importance of the questions involved and the amount of time requisite for a careful study thereof and of the very many authorities cited by the respective parties, and remembering, on the other hand, the importance of a speedy determination of this appeal and the injury to the public which would result from further delay in deciding the questions now before us, we conclude that no further discussion of the issues here involved is advisable. Having due regard for respondents' arguments to the effect that a statute will not be held unconstitutional by construction, nor unless the court is clearly required by the law to hold the statute void, that laws are presumed to be valid, and that acts providing for the raising of revenue should always receive most favorable consideration, we are, notwithstanding these propositions, fully convinced that chapter 151 of the Laws of 1929, p. 380, is unconstitutional, in that it violates the ''equal protection'' clause of the constitution of the United

States (*Quaker City Cab Co. v. Pennsylvania, supra*), and for the further reason that it is in contravention of the laws of the United States which provide that no state has authority to tax the income from tax-exempt governmental securities (*Macallen v. Massachusetts,* 279 U. S. 620).

This holding renders unnecessary any discussion of appellants' contention that the act impairs the obligation of contracts in violation of article I, § 10, paragraph 1, of the constitution of the United States, and that it violates the uniform taxation provisions of the constitution of the state of Washington, or other provisions thereof.

The judgment appealed from is reversed with instructions to the trial court to overrule respondents' demurrer to appellants' complaint.

MITCHELL, C. J., FRENCH, TOLMAN, MAIN, and PARKER, JJ., concur.

HOLCOMB, J. (dissenting) — We are vitally interested in the growth and prosperity of savings and loan associations and of savings bank establishments. The burdens by taxation upon those institutions are matters of deep concern, for they vitally affect thousands of people possessed of small means. As to appellants who are dealers in investment securities, we are not so much concerned, inasmuch as they can pass on the burdens of taxation to their more opulent customers who constitute, as to them, "ultimate consumers."

However, if these decisions become the law because of a supposed infringement of the Federal constitution existing in the statute before us, the lawmakers of this state, henceforth, practically, will be inhibited from enacting any taxing system except by laying all the burdens directly upon property within the state.

Because the decisions are so far-reaching in that respect, as well as erroneous, and because they are unfortunate in another respect, namely, that decisions involving the validity of legislation as affected by the Federal constitution, when decided adversely to the state, cannot be taken by the state to the United States supreme court for review, but if decided otherwise, other parties could—I cannot concur.

The prevailing decisions are based upon the erroneous premise that, "notwithstanding the legislative declaration, the tax is not in truth and in fact an excise or corporate privilege tax." The majority surely have not carefully studied the nature of excise taxes. They were long ago defined as:

"Taxes laid upon the manufacture, sale, or consumption of commodities within the country, upon licenses to pursue certain occupations and upon corporate privileges." Cooley on Constitutional Limitations (7th ed.) 680.

In *Flint v. Stone Tracy Co.*, 220 U. S. 107, a Federal corporation tax (36 Stat. 11, 112-117, c. 6), although laid upon corporations created by the states and the tax not apportioned between the states, as required by a Federal constitutional provision for direct taxes, was held to be an excise and valid. It was also there held that there is a substantial difference between business as carried on in the manner specified in the act and as carried on by partnerships and individuals to justify the classification; that there are distinct advantages in carrying on business in the manner specified in the corporation tax law over carrying it on by partnerships and individuals, and it is this privilege which is the subject of the tax, etc.

The Federal act, by its terms, imposed "a special excise tax with respect to the carrying on or doing

business'' (by corporations), the tax to be assessed upon net income received ''from all sources.''

In the debate in Congress leading to the enactment of the above corporation tax act, Senator Elihu Root said:

''My own state has for many years grouped all corporations within its borders, with certain specific exceptions, in a class upon the revenues of which it imposes a tax imposed on no other members of the community. And it is a late day for us to be told that there is no right in the United States to adopt this old familiar, general basis of classification for the purpose of imposing an excise tax. It is founded upon reason, sir, and not alone upon authority.'' 44 Cong. Rec. 4005-4006.

That Congress has no more power or right to declare and adopt subterfuges to evade constitutional limitations than has the state legislature, is undeniable.

The majority rely largely upon the decisions of the supreme court in *Quaker City Cab Co. v. Pennsylvania,* 277 U. S. 389, and *Macallen Co. v. Massachusetts,* 279 U. S. 620.

A vast variety of state taxation laws have been before that court, and in many of them there are subtle distinctions and in some of them apparent subterfuges. In the last cited case, that court went behind the last legislation before it and examined legislation that had existed in Massachusetts theretofore, and discovered that there was a patent attempt to evade Federal laws and decisions in the later legislation. In the *Quaker City Cab Co.,* case, *supra,* as was said by the court, the Pennsylvania law imposed a tax upon the gross receipts of corporations engaged in the taxicab business for hire, and not upon individuals engaged in the same business. The court said that:

" 'The real subject of the tax is the gross receipts of a company engaged in the transportation of freight or passengers. . . . ' "

It was, therefore, obviously and concededly, a direct tax, which same tax was not levied upon individuals engaged in the same business.

Chapter 151, Laws of 1929, p. 380, with which we are concerned, contains no such defects. It is apparent from an examination of it that it was carefully drawn to comply with the Federal decisions relating to such taxation so as to avoid conflict with the Federal constitution and the delegated power to tax national banks granted to the states.

"The power of taxation rests upon necessity and is inherent in every independent state. It is as extensive as the range of subjects over which the government extends; it is absolute and unlimited, in the absence of constitutional limitations and restraints, and carries with it the power to embarrass and destroy. *Post. Tel Co. v. Charleston,* 153 U. S. 692; *McCrary v. United States,* 195 U. S. 27." *Tanner v. Little,* 208 Fed. 605.

The above pronouncement of the law by Judge Rudkin in the district court was approved and confirmed by the supreme court in *Tanner v. Little,* 240 U. S. 369.

Chapter 151, *supra,* is not only declared by the legislature to be an excise law or tax upon corporate privileges, all of which are created by the state and exist by its grace, but the law is intrinsically nothing else than a law imposing excises. *Flint v. Stone Tracy Co., supra.* The very existences of these appellants in corporate form are privileges conferred by the state. *Provident Institution v. Massachusetts,* 6 Wall. (U.S.) 611; *Hamilton Co. v. Massachusetts,* 6 Wall. (U. S.) 632; *Baltic Mining Co. v. Massachusetts,* 231 U. S. 68; *Alpha Portland Cement Co. v. Massachusetts,* 268 U. S. 203.

In *Northwestern Mutual Life Ins. Co. v. Wisconsin,* 275 U. S. 136, the validity of an excise measured by net income, including that from tax-exempt securities of the United States, was recognized. It was also held in that case that a state tax on domestic insurance companies, called an annual license fee, consisting of three per cent annually of the *gross income* of the corporation, save rents from land otherwise taxed and premiums, was void *pro tanto,* only where the income was in part interest from United States bonds. But here the majority hold the entire taxing scheme void, upon the corporate state franchises, based upon the *net income,* and if income derived from interest from United States bonds should be exempted, that could be shown and claimed in the returns of the tax payers to the assessing officers for exclusion in making up their net incomes. Such decision by the majority would not strike down the entire act. Possibly, this court would be compelled to sustain such a contention. The distinction between net income and gross income as the measure of a tax is well established. *Peck & Co. v. Lowe,* 247 U. S. 165; *United States Glue Co. v. Oak Creek,* 247 U. S. 321.

The majority have not fully comprehended the precise import of the *Quaker City Cab Co.,* and the *Macallen* cases, *supra.* To be properly understood, they should have been analyzed and compared with the decisive and other illustrative cases.

That court seems to have adhered consistently to the principle that either the Federal or state governments may constitutionally impose an excise tax on corporations for the privilege of doing business in corporate form, and measure the tax by the property or net income of the corporation, including the tax-exempt securities of the other or income derived from them. The *Quaker City Cab Co.* and the *Macallen*

cases did not overrule any of the former cases, and do not seem to have departed from or modified them, but to have found refined distinctions which were decided by a closely divided court.

It is not incumbent upon us to stretch for reasons and grounds to grant immunity for infringements of the Federal constitution where there may be even some doubt. In this instance, there seems to be little doubt. There are more doubtful questions arising under our own constitutional provisions, especially as to the validity of §§ 24, 25 and 27 of chapter 151, *supra*. Even those, in my opinion, could be resolved in favor of the validity of the act without doing any violence to well established legal principles or precedents.

The trial judge very ably analyzed all the legal propositions involved herein in a most competent way, in his memorandum opinion, with which I am in general accord.

Were it not for the urgency of an early decision by the court upon this legislation, I should desire to extend my discussion further upon the points touched, and also upon the validity of the legislation under our state constitution. Inasmuch as the majority have disregarded the effect of our own constitution upon the act, I shall also pass the questions.

For the foregoing reasons, very inadequately stated, I dissent. The judgments of the lower court should be affirmed.

FULLERTON, J. (dissenting)—While I agree with the conclusion reached by Judge Holcomb in his dissenting opinion, I wish to notice with more particularity some of the questions he has noticed but generally.

The majority, it will be observed from the concluding part of their opinion, rest their conclusion that the act in controversy is in contravention of the Federal

constitution, because it denies to the complainants the equal protection of the laws, and is in contravention of the Federal laws because it taxes tax-exempt securities. To reach these conclusions, the majority hold, and must necessarily hold, that the act is not what upon its face it purports to be, and is not what the law-making power enacting it intended and declared it to be. They hold, to state the holding more particularly, that, notwithstanding the act is in form and declaration a tax on the right of the corporation affected by it to do business within the state—that is, a tax upon their franchises—it is, in substance and effect, not such a tax, but is a tax upon their properties.

The process of reasoning by which this conclusion is reached I must confess I have difficulty in understanding. In so far as the franchise of a corporation is property, it is, of course, a tax upon property, and in as much as the tax is levied in lieu of all other taxes, it can be said to be a substitute form of a property tax. But to say that it is not a franchise tax, nor a substitute for a property tax, but is a direct tax upon property, is, in my opinion, neither a correct interpretation of the meaning of the act, nor in accord with the actual fact. I can thus see no reason for calling the tax something else than it really is, and measuring its constitutionality by a rule applicable to that something else. In my opinion, it should be treated as a franchise tax and its constitutionality measured by that consideration.

Considering the tax as a tax on franchises and as a substitute for other taxes, I can see no constitutional objection to it. I am aware that the majority intimate that such a tax cannot be laid in this state. But if this be their meaning, it is contrary to both principle and authority. Corporations in this state are organized under general laws. By their organization, the state

enters into no contract obligation with them. By § 1, Art. XII, of the state constitution, corporations may not be created by special laws, they must be organized under general laws, and it is therein specially provided that "all laws relating to corporations may be altered, amended, or repealed by the legislature at any time." Because of this provision, corporations have no contractual immunity from the imposition by the legislature of additional burdens subsequent to their organizations; the legislature may not only impose upon them such additional burdens at its pleasure, but it may absolutely destroy them.

For authority we need not go beyond our own decisions. That franchises of corporations is a species of property that can be taxed was expressly held by this court in the following cases: *Commercial Electric Light & Power Co. v. Judson*, 21 Wash. 49, 56 Pac. 829, 57 L. R. A. 78; *Edison Electric Illuminating Co. v. Spokane Co.*, 22 Wash. 168, 60 Pac. 132; *Lewiston Water & Power Co. v. Asotin County*, 24 Wash. 371, 64 Pac. 544. In the first two of these cases, the question was directly presented. The trial court had held that franchises of corporations were not taxable, and in each instance we overruled its holding. In so far as my examination has gone, no court of any other jurisdiction has held to the contrary. There are cases which hold, because of constitutional restrictions, or because of contract, franchises of corporations are not taxable. But these cases rest on special grounds not present here. They do not deny the power as a power.

I am aware that it is said in the majority opinion in this connection that "we must, nevertheless, note that this act operates only when the corporate privilege to do business is exercised." I take this to mean that the majority are doubtful whether the legislature can make a distinction, when taxing franchises of corpora-

tions, between active and inactive corporations. But I see no objection to the act because of this reason. Certainly, the complaining corporations cannot object to paying a tax unless other corporations similarly situated pay no tax, and this act does not provide, nor is there any other act which provides, that inactive corporations shall be exempt from taxation.

Nor is the tax objectionable, in any constitutional sense, because it is an indirect and not a direct tax on property. These corporations deal in, and practically all of their wealth consists of, intangible property, a form of property that is difficult to reach by direct taxation. To tax their franchises and measure the tax on the income derived from these securities, certainly cannot be objectionable if the corporations, in the end, pay no greater tax than they would be required to pay were the tax direct upon their properties, and concerning this there is no contention.

In the briefs of the several appellants, there are extended arguments directed to the contention that the act in question is violative of the state constitution. But as the majority do not notice these arguments, I shall not do so further than to say that my study of them has led me to the conclusion that the contention is unfounded. Viewed as a tax on the franchises of corporations, I can, therefore, see no reason why the act is not a valid exercise of legislative power.

But viewing the act as a tax on property, and not a tax on franchises, I think the majority are wrong in their conclusion. The first of the reasons assigned for the conclusion is that it denies to the appellants the equal protection of the laws. I have found some difficulty in gathering the reasons assigned for this conclusion. The majority first assert that, since the cause is here upon a demurrer to the complaint, we must take

the facts alleged in the complaint as true. This is followed by statements of the purport of these allegations, and, taking these statements as a correct interpretation of the act, the conclusion is drawn that the act is discriminatory as between the corporations affected by it.

That there might be something wrong with this line of reasoning ought, it would seem, to be apparent. In the first place, it is not accurate to say that a demurrer admits the allegations of a complaint in their entirety. The correct rule is that it admits only the allegations that are well pleaded. In the second place, the deductions from the act drawn by the pleader must be measured by the terms of the act itself, and if these deductions are not in accord with the proper conclusions to be drawn from the act, they are not well pleaded. The act is partially quoted in the majority opinion, sufficiently full to illustrate the questions involved. Only a casual reading of them, it seems to me, shows that there is no discrimination between the corporations affected by it. Each is taxed on a per centum of its net income and in proportion to the amount of its net income. This is not to discriminate between the corporations, unless it is to be said that taxes upon corporations cannot be lawfully measured by net income; unless it is to be said that a corporation whose wealth is measured in millions of dollars cannot be required to pay more taxes, when the tax is on the franchise, than can a corporation whose wealth is measured by hundreds of dollars. I am not as yet prepared to subscribe to this doctrine. I cannot conceive that to tax a corporation on its franchise and to measure the tax by its income is, in any just sense, discrimination.

The majority also cite from the complaint the allegation to the effect that banks, under the act, will pay a tax at the rate of $0.57 per thousand dollars of re-

sources, whereas the other corporations affected will pay at the rate of $2.46 per thousand dollars of resources, and seem to take the allegation as true. But here again the pleader is only drawing his conclusions from the act. The act itself makes no such discrimination. It taxes all at the same rate, and if this results in the conclusion reached, it is due to the cause that banks do not earn the same income on their resources that the other corporations earn. This could easily be true. Banks are subjected to many limitations and burdens to which the other corporations are not subjected, and it may be that, because of these, they will not be required to pay as great a tax, measured by resources, as the other corporations will be required to pay. But, if it is proper to measure taxes on property by the amount of the income derived from the property, it is not unlawful discrimination even if the result predicted does follow.

Other reasons assigned by the majority for holding that the tax denies to the appellants the equal protection of the laws are stated by them in the following words:

"The tax here sought to be levied is, as was stated by the supreme court of the United States in the case of *Quaker City Cab Co. v. Pennsylvania,* as above quoted, 'one that can be laid upon receipts belonging to a natural person quite as conveniently as upon those of a corporation. It is not peculiarly applicable to corporations as are taxes on their capital stock or franchises. It is not taken in lieu of any other tax or used as a measure of one intended to fall elsewhere. It is laid upon and is to be considered and tested as a tax on gross receipts; it is specifically that and nothing else.' "

It may be that I do not understand just what the majority mean by the quoted excerpt, but they seem here to take an entirely different view of the nature

of the tax than they have elsewhere taken in their opinion. They seem to assume that it is a tax on the gross receipts of the corporations, and is to be considered and tested as a tax on gross receipts, and seem to assume that the tax authorized by the act is not taken in lieu of any other tax or used as a measure of one intended to fall elsewhere. I cannot draw these conclusions from the language of the act. That the tax is not a tax on gross receipts, either in form or substance, is made clear by the act itself. In form the act is a tax on the franchises of the corporations, the amount of the tax to be measured by a percentage of their net receipts. Plainly, unless words have lost their meaning, this is not a tax on gross receipts.

Again, in the first sentence of the quotation it is said that the tax is ''one that can be laid upon receipts belonging to a natural person quite as conveniently as upon those of corporations.'' I take it that the majority mean that, because the tax is not laid upon natural persons, but only upon the corporations described, the act is void. But with this I cannot agree. It is to deny to the legislature the power to classify persons and property for the purposes of taxation, yet this is a power not denied by the state or Federal constitution, and a power that has been exercised by the legislature since the beginning of statehood. And that it may so classify, has been held many times by this court. It was so held in *Ridpath v. Spokane Co.*, 23 Wash. 436, 63 Pac. 261; *Tekoa v. Reilly*, 47 Wash. 202, 91 Pac. 769, 13 L. R. A. (N. S.) 901; *Puget Sound P. & L. Co. v. Seattle*, 117 Wash. 351, 201 Pac. 449, and in *MacLaren v. Ferry County*, 135 Wash. 517, 238 Pac. 579. The limitation is that uniformity and equality must exist in the classes, and the tax imposed upon the property of the one class must not be at a higher rate than

is imposed upon the property of another. But classification in itself is not objectionable. Oftentimes, it is the only method by which equality in taxation can be maintained.

The statement that the tax here levied is not taken in lieu of other taxes is likewise without foundation. A study of the act, together with a study of the other taxing laws of the state, will show that this tax is taken in lieu of all other taxes on the property of the corporations affected by it; that it is a tax intended to reach intangible property; a species of property on which neither corporations nor natural persons have for many years paid taxes. It is not, therefore, an additional tax on property assessed and collected under other statutes; it is a tax on property which otherwise would and has heretofore escaped taxation.

The case relied upon by the majority to sustain their position is *Quaker City Cab Co. v. Pennsylvania,* 277 U. S. 389. Simply stated, that case was this: Certain corporations, one of which was foreign to the state of Pennsylvania, were engaged in the taxicab business in the city of Philadelphia. There were a number of individuals and partnerships engaged in the same business. The legislature enacted a law authorizing a tax on the gross receipts of the corporations engaged in the business, but did not make a like exaction from the individuals and partnerships engaged therein. At the suit of the foreign corporation, the court held the tax illegal because it did not make the natural as well as the artificial persons subject to the tax, and thus violated the equal protection clause of the Federal constitution.

Conceding the soundness of that decision (it was questioned by three of the distinguished members of that court in arguments that are at least appealing), I cannot conceive that it has application to the ques-

tion here presented. Here, the corporations complaining do not pay taxes on their property as individual persons pay taxes and in addition pay this tax. As I have pointed out, they pay in this manner in lieu of all other taxes, and if they do not pay this tax they pay no taxes at all. Manifestly, there is here no discrimination such as is pointed out in the cited decision. The corporations here affected pay only one tax levied in a different manner than other taxes are levied.

The corporations affected by the act are the financial institutions of the state. There are numerous other corporations engaged in other pursuits, such as trade, manufacture, and the like, who are not taxed upon their net income, and, seemingly, it is inferred that, because of this difference, the present act is invalid. But if classification for the purpose of taxation is permissible, as I have attempted to show, this act is not invalid for this reason. The other corporations are not permitted to escape taxation. Their property is taxed under other laws and by different means of measuring value, and there is nothing in this record, and nothing elsewhere of which I am aware, that shows that they do not pay a tax commensurate with their wealth, or shows that they will not hereafter bear their just proportion of the burdens of the state. After all, this is the just criterion. The object and purpose of all tax laws is to distribute the burden of maintaining the state equally upon all property, and when this is done, the manner and means by which it is done matter little.

Again, it is said that there are natural persons engaged in the business in which the corporations are engaged who are not taxed upon their net incomes. But this is not quite accurate. By positive law, the business of conducting a bank, a building and loan association, a savings bank, a mutual savings bank, and

like institutions, is expressly limited to corporations. A natural person can, of course, loan his own money, or the money of others intrusted to him for that purpose, and he may buy stocks and bonds and other moneyed securities for himself and for others, but when he acts for others, he must act under private contract. He cannot, as the corporations affected by the act may do, open up a place of business for the receipt of deposits from the general public and treat the deposits when so received as his own with nothing but a general liability for its return. Stated in another way, the corporations affected by the act have special privileges not accorded to a natural person, and to my mind it is idle to say that they cannot be differentiated for the purposes of taxation.

The second reason given for holding the act invalid is that it authorizes a tax on tax-exempt securities. This conclusion is drawn from the fact that the statute under which the corporations affected are organized permits them to invest their funds in tax-exempt securities, and that some of them, if not all, have a part of their funds so invested, and from the further fact that the tax is measured by net income, without any deduction of that part of it which may be derived from tax-exempt securities. Taking the majority view of the effect of the act, this objection is perhaps pertinent, but I am unable to conceive how it avoids the entire act. At most, only a part of the tax is void for this reason, and I see no reason why the invalid part may not be segregated from the valid part and the tax be allowed to stand for the part that is valid. The courts hold acts of the legislature, which are invalid in part, wholly invalid only when the invalid part is inseparable from the valid part, or when it is impossible to say whether the legislature intended the act to operate as a whole or not operate at all. The act here in ques-

tion of itself relieves us from this latter consideration. By § 38 of the act (see Laws of 1929, p. 397, chap. 151) it is provided that:

"If any section or provision or part of this act shall be adjudged to be invalid or unconstitutional, such adjudication shall not affect the validity of the act as a whole or any section, provision or part thereof not adjudged invalid or unconstitutional."

This leaves for consideration only the question whether the invalid provision of the act is separable from the valid provision. I can see no difficulties on this score. It being a tax on property, a part of which is taxable and a part not taxable, manifestly there is no substantial reason why the invalid part may not be segregated from the valid part and the tax be allowed to stand on the part on which the tax is valid. Nor are there any insuperable administrative difficulties that stand in the way. By the very process the statute prescribes for ascertaining the net income, the amount of income derived from tax-exempt securities can be segregated and rejected.

But the majority cite the case of *Macallen Co. v. Massachusetts*, 279 U. S. 620, as authority for holding the entire tax void because it is void in part. I cannot so read the case. The facts there involved are much the same as those involved here; that is, it was a tax levied on property in which the amount of the tax was measured by net income derived from both taxable securities and tax-exempt securities. The corporation against which the tax was levied paid the tax under protest, and, to use the language of the court,

". . . brought a petition for abatement of the tax under provisions of the state law, setting forth the foregoing facts and alleging the unconstitutionality, under the Federal constitution, of the statute *in so far as it was held to include interest derived from the tax-exempt securities.*" (Emphasis mine.)

The court sustained the petitioner in its contention, but, plainly, in so doing, it did not declare the entire act void. Indeed, so far from so declaring, the question was not even before the court.

The majority also cite the last mentioned case as impelling the holding that the tax here in question is a tax on property, and not a tax on franchises. I think this conclusion unfounded. As I read the case, the court held the statute there in question to be a tax on property, and not a tax on franchises, as it purported to be, because of the peculiar circumstances surrounding its enactment, and was not intending to lay down the general rule that a tax on franchises was a tax on property in every instance where the amount of the tax was measured by net income derived in part from tax-exempt securities. I am led to this belief by the fact that the court had held in a number of cases, extending back for a period of more than seventy years, directly to the contrary. These cases are not expressly overruled by the court, and it is impossible to believe that they intended to overrule them *sub silentio*. Moreover, the cases cited by the court as sustaining its position are inapposite to this conclusion. They are cases in which the tax was directly levied on non-taxable property, not cases where the non-taxable property was used merely as a measure of the tax.

The decision of the majority has far-reaching consequences. It affects materially the revenues of the state, and I fear it has more serious consequences. The corporations affected by the act own and control a vast part of the taxable wealth of the state, and if their property is to be held as exempt from taxation, I know of no reason why owners of other property may not complain that our entire system of taxation is void. This because it violates the state constitution. That instrument (Art. VII, § 1) provides that:

"All property in the state . . . shall be taxed in proportion to its value, to be ascertained as provided by law."

It also provides (*Id.* § 2) that the legislature shall provide by law a uniform and equal rate of taxation, "so that every person and corporation shall pay a tax in proportion to the value of his, her or its property," and it requires no emphasis to make clear that to tax only a part of the property of the state is to violate these provisions of the constitution, and no emphasis to make clear that tax laws which tax the property of one person and exempt the property of another equally liable to taxation are discriminatory and void.

The judgment of the trial court should be affirmed.

HOLCOMB, J., concurs with FULLERTON, J.

MILLARD, J., concurs with FULLERTON and HOLCOMB, JJ.

## ON REHEARING.

[Nos. 22228, 22229, 22259, 22266, 22267. *En Banc.* August 7, 1930.]

PER CURIAM—Respondents having filed in these cases a petition for a rehearing, and Messrs. Arthur G. Cohen and Lester M. Livengood, as *amici curiae,* having also filed a petition for a rehearing, the two petitions have been considered together.

*Amici curiae* argue that certain language used by this court in the opinions filed in this case and in *Burr, Conrad & Broom v. Chase, post* p. 393, 289 Pac. 551, indicates that the court intended to lay down certain principles of constitutional law which affect other existing laws providing for the raising of revenue, and which may be construed as limiting the power of the state legislature in enacting future legislation providing for the levying of other and different species of taxes.

In order to clarify the situation, the court now states that the opinions above cited were rendered with a view to determining the questions presented by the cases at bar, and those questions only; that the majority of the court was of the opinion that the legislation therein attacked must be held, under the decisions of the supreme court of the United States, to attempt to establish a property and not an excise or corporation franchise tax; that, being a property tax, the same could not be levied upon a certain class of corporations only and not upon copartnerships or individuals engaged in the same business. The majority of the court was also of the opinion that, under the decision of the supreme court of the United States in the case of *Macallen Co. v. Massachusetts,* 279 U. S. 620, the legislature of this state had no legal authority to provide for a tax based upon income from which income revenue derived from United States securities should not be deducted.

The opinions rendered should not be construed as determining any question which was not before the court, and the language of the opinions should be limited to the matters expressly decided.

With this explanation, the petitions asking for a rehearing are denied.