[No. 25025.  Department Two.  December 21, 1934]

*In the Matter of the Estate of* JOHN KRUEGER, *Deceased.*

LEO GOSTINA *et al., Appellants,* v. JOHN W. WHITHAM, *as Executor, Respondent.*[1]

*Roger J. Meakim* and *Louis Henry Legg,* for appellants.

*Wingate & Suffel,* for respondent.

GERAGHTY, J.—This appeal presents the question whether an executor under a nonintervention will may

[1]Reported in 39 P. (2d) 381.

invest the funds of the estate in the stock of a savings and loan association; or, stated in another way, having relation to the facts in the instant case, whether an executor, who has in good faith made such investment, is personally liable to the estate for the loss sustained through the subsequent insolvency of the association.

John Krueger died in 1926, leaving a nonintervention will in which the respondent, John W. Whitham, was named as executor. The will was duly admitted to probate, the executor qualified thereunder, and upon the filing of an inventory, the estate was, by order of court, declared solvent. Notice to creditors having been given, the appellants here filed a claim for ten thousand dollars against the estate; the claim being evidenced by a note in that sum executed by the decedent, and by its terms payable upon his death. The validity of the claim was established by a court action, in which a judgment of the superior court was, upon appeal to this court, affirmed. While the estate was appraised at but little over ten thousand dollars, it has been involved in much litigation, this being its fifth appearance in this court.

The executor having failed to pay their claim, the appellants, on November 24, 1931, caused a citation to be issued by the superior court for King county, requiring him to show cause why the judgment should not be paid. Responding to the citation, the executor filed a detailed report, giving an account of all receipts and disbursements, and showing a balance of the estate in his hands in the sum of $5,458.83. As part of this balance, however, there was included five thousand dollars, which the respondent had "deposited" in the Home Savings & Loan Association of Seattle, in October, 1928, and was evidenced by the loan association's pass book. The association, having subsequent

to this deposit been declared insolvent, was in process of liquidation by a receiver.

Objections to this report were filed on behalf of the appellants, particular exception being taken to the investment in the Home Savings & Loan Association, on the ground that such investment was improper and unauthorized. A hearing was had upon the executor's report and the objections of appellants thereto, and the court, having made findings of fact and conclusions of law, entered an order adjudging that the estate had been honestly and efficiently administered by the executor, and that the report filed should be approved and confirmed in all respects.

The appellants assign as error the making of this order and of the findings of fact upon which it was based.

With respect to the investment in the savings and loan association stock, the court found:

"(7) That on the 2d day of October, 1928, said executor invested in stock of the Home Savings & Loan Association, a corporation under the laws of the state of Washington with its principal place of business in Seattle, the sum of $5,000, and received the usual pass book from said association showing that as such executor he was the owner of 50 shares of the capital stock of said association, which said shares he still retains together with the accumulated dividends thereon, in said Home Savings & Loan Association.

"(8) That at the time said executor invested said $5,000 in the said Home Savings & Loan Association, to-wit, October 2, 1928, said association was in good standing, enjoyed public confidence and was at said time paying dividends at the rate of 6% per annum on its stock and was at all times under state supervision as provided by law, and that said association had approximately 16,000 stockholders in said institution."

■ Having before us no statement of facts, we must presume, in aid of the trial court's order and findings, the existence of facts warranting an investment of idle funds of the estate pending final settlement, if the executor had authority under the terms of the will to make the investment.

The will provides:

"I hereby expressly provide, order and direct that all the estate of which I may be possessed at the time of my death shall be settled by my executor hereinafter named without the intervention of any court and in such manner as he may deem advisable . . . and that after the probate of such will and the filing of an inventory and publication of notice to creditors as required by existing laws, all my estate shall be held, managed and settled without the intervention of any court . . ."

The will was drawn in conformity with Rem. Rev. Stat., § 1462 [P. C. § 9967], and Rem. Rev. Stat., § 1463 [P. C. § 9968], provides:

"Executors acting under wills such as are mentioned in the last preceding section shall have power, after the filing of an inventory of the estate, if the said estate has been adjudged solvent, to mortgage, lease, sell and convey the real and personal property of the testator without an order of the court for that purpose and without notice, approval or confirmation, and in all other respects administer and settle the estate without the intervention of the court."

■ We have uniformly held that an executor under a nonintervention will was, in fact, a trustee, deriving his power from the will, and not subject to the control of the court, except where, under the final proviso of § 1462, mismanagement amounting to breach of trust is shown. *Ralph v. Lomer,* 3 Wash. 401, 28 Pac. 760; *Newport v. Newport,* 5 Wash. 114, 31 Pac. 428; *Fulmer*

*v. Gable,* 73 Wash. 684, 132 Pac. 641; *Megrath v. Lawrence,* 142 Wash. 324, 253 Pac. 455, 256 Pac. 503.

The will before us directs that the executor shall settle the estate "in such manner as he shall deem advisable," and that the estate "shall be held, managed and settled without the intervention of any court." This language confers broad powers upon the executor, broad enough, we think, to authorize what was done here. He had money on hand to be held until the affairs of the estate should be closed. He could have put it in a savings bank, made a time deposit in a commercial bank, or, to use his own words, "deposited" it in a savings and loan association. There would be the possibility of loss in any of these institutions through insolvency. The executor might well have thought, when making the investment, that the chances of loss were no greater in a savings and loan association than in a bank, and the loan association held out the promise of a higher return, a consideration proper for him to weigh.

The appellants quote authorities to the effect that trustees are not allowed to invest trust funds in the stocks of private corporations. This is a good rule, in the sense in which it is applicable. We think it not applicable here, however. While it is true that members of a savings and loan association are called stockholders, and have issued to them pass books representing their shares in the capital and earnings of the association, these associations are essentially different in character and operation from the ordinary stock companies. Their use as a savings medium for people of small means is encouraged by law; their capital is the accumulation of small savings, and is to be invested under legal restrictions that would seem to free them from the hazards of ordinary business

corporations. Unlike the ordinary investors in corporate stocks, members of these associations can withdraw their capital and earnings on compliance with conditions prescribed by their governing statute.

We are speaking in retrospect of conditions as they existed in 1928, when the investment was made. Certainly, these associations were then in good repute. While the members were technically stockholders, in common acceptation these savings were deposits, rather than investments in corporate stock. Indeed, this court implies this conception of the members' relation in what we may call a dictum, found in *Aberdeen Savings & Loan Assn. v. Chase*, 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232, where it is said:

"It is, of course, true that banks, in paying interest upon their savings or time deposits, pay according to an agreed rate, while appellants, in crediting their members or shareholders with dividends, do not make such credits on any contract rate, but adjust them upon the basis of corporate earnings. The full amount of the deposits and credited dividends are subject at all times to withdrawal by the member (subject, of course, to the rules of the savings bank as to the giving of notice, when required), the principal sum deposited being nowise subject to any hazard or risk, the element of speculation attending only the dividends which may or may not be earned from the funds deposited by the shareholders."

Appellants cite chapter 80, Laws of 1917, p. 271, and chapter 206, Laws of 1929, p. 534. These statutes relate to banks and trust companies, and prescribe, among other things, the character of securities in which such institutions may invest their trust funds. These statutes can have no application in the solution of the question before us, since they relate solely to the duty of corporate trustees, and not to individual executors. Neither can it be said that they establish a public

policy limiting the express powers conferred on individual executors under nonintervention wills by the probate statute.

The judgment will be affirmed.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.