[No. 41975.    En Banc.    June 1, 1972.]

THE STATE OF WASHINGTON, *on the Relation of Robert V. Graham, Appellant,* v. THE CITY OF OLYMPIA *et al., Respondents.*

*Slade Gorton, Attorney General,* and *Robert F. Hauth, Assistant,* for appellant.

*Slade Gorton, Attorney General,* and *Philip H. Austin, Deputy* (appearing under authority of RCW 7.24.110).

*Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson,* by *James A. Furber,* for respondent Thurston County Federal Savings and Loan Association.

*Davis, Wright, Todd, Riese & Jones,* by *Richard A. Derham,* and *Graham, McCord, Dunn, Moen, Johnston & Rosenquist,* by *Charles L. Sayre,* for respondents Seattle-First National Bank et al.

*Ashley, Foster, Pepper & Riviera,* by *Louis H. Pepper,* for Washington Mutual Savings Bank.

HUNTER, J.—This is a declaratory judgment action brought by the plaintiff (appellant), Robert V. Graham, State Auditor, to test the constitutionality of certain statutes which authorize the deposit of public funds, in this case by a municipal corporation, in interest-bearing time deposits with banks, mutual savings banks, and savings and loan associations, and seeking injunctive relief.[1]

There is no controversy as to the facts. On or about January 9, 1970, the State Auditor, through the division of municipal corporations, commenced a regular examination of the defendant (respondent), City of Olympia, as required by law. During the course of the examination, it was discovered that the City of Olympia had deposited or invested certain of its funds in interest-bearing time deposits

---

[1] The reference to "banks" in the opinion includes state banks, trust companies, and national banking associations.

The reference to "banking institutions" includes, in addition, mutual savings banks and savings and loan associations.

with the defendants (respondents), Seattle-First National Bank, National Bank of Commerce, and Thurston County Federal Savings and Loan Association. For each deposit, the City of Olympia received a certificate of deposit evidencing either a 90-day or a 6-month maturity date from the date of issue.

The time deposits made by the City of Olympia are expressly authorized under the provisions of Laws of 1951, ch. 6, § 1, p. 22 (RCW 33.52.010); Laws of 1965, ch. 111, § 3, p. 1328 (RCW 32.12.100); and Laws of 1969, 1st Ex. Ses., ch. 193, p. 1457 (codified in part in RCW 39.58 and RCW 36.29.020).

The provision of our constitution asserted by the plaintiff to be violated by these statutes is Const. art. 8, § 7, which is as follows:

> CREDIT NOT TO BE LOANED. No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

By stipulation and order, Washington Mutual Savings Bank (respondent-intervenor), was allowed to intervene— it being the recipient of a 12-month time deposit made by the City of Olympia in June of 1970.

Upon a trial to the court, a judgment was rendered in favor of the defendants, upholding the constitutionality of all the contested laws and denying the requested injunctive relief. The plaintiff now prosecutes this appeal.

The plaintiff contends that time deposits of municipal funds in banks, mutual savings banks and savings and loan associations are unconstitutional loans of public funds or credit and that the statutes authorizing such deposits or investments are unconstitutional. It is argued that the framers of our constitution intended to prohibit such deposits of public funds when they enacted Const. art. 8, § 7. We do not agree.

We have previously looked into the genesis of this provision of our constitution and found that the inclusion of article 8, section 7, was a response to loans and gifts made by other states and local governments to private companies to stimulate railroad development which, in many instances, became an improvident investment leaving the governments without recourse. *PUD 1 v. Taxpayers of Snohomish County,* 78 Wn.2d 724, 479 P.2d 61 (1971); *Rauch v. Chapman,* 16 Wash. 568, 48 P. 253 (1897).

It is apparent from the constitutional prohibitions in article 8, section 7, that the framers had in mind the security and protection of public funds. It is significant that prohibitions in this section of the constitution do not extend to the United States government, implicitly indicating that the framers were satisfied that investments of public funds in securities of the United States government would be adequately protected, and that no prohibition was necessary as required in the case of individuals, companies or corporations. We see no distinction in the security of public funds by their investment in United States government securities as compared to the security of those public funds deposited in banks, mutual savings banks, and savings and loan associations, *which are insured by an agency of the United States government,* about which we will discuss more in detail later in this opinion.

Also, it is significant in considering the intentions of our constitutional fathers, in the prohibitive language against loans, that this was not meant in the sense of prohibiting deposits in banking institutions, as it is clear from Const. art. 11, § 15, that it was their direction that municipal funds be deposited with the treasurer or other *legal depositary.* It reads:

> DEPOSIT OF PUBLIC FUNDS. All moneys, assessments and taxes belonging to or collected for the use of any county, city, town or other public or municipal corporation, coming into the hands of any officer thereof, shall immediately be deposited with the treasurer, *or other legal depositary* to the credit of such city, town, or other corporation re-

spectively, for the benefit of the funds to which they belong.

(Italics ours.)

■ The constitutional delegates unquestionably had banking institutions in mind as legal depositaries as evidenced by their knowledge of banking practices from the references to banking institutions in other sections of the constitution.

■ This being true, they also knew it was a banking practice that monies deposited in banking institutions would be used by those institutions for banking purposes, creating the relationship of debtor and creditor. We believe, therefore, that the prohibition was against loans as used in the ordinary and popular sense, between a lender and a borrower, where a question of the security of funds in such transactions would be involved, rather than as in a debtor-creditor relationship arising from the deposit of funds in a banking depositary.

■ In the interpreting of our constitution the language employed must be taken and understood in its natural, ordinary, general, and popular sense. *State ex rel. O'Connell v. PUD 1*, 79 Wn.2d 237, 484 P.2d 393 (1971); *State ex rel. State Capitol Comm'n v. Lister*, 91 Wash. 9, 156 P. 858 (1916). In the ordinary and popular sense, a loan of money or credit is at once understood to mean a transaction creating the customary relation of borrower and lender. People take their money to banks, mutual savings banks, or savings and loan associations for deposit, and the institutions accept the money as *deposits,* and not as *loans.* It is doubtful that anyone ever takes money to a banking institution for deposit under the impression that the transaction is to constitute a "loan," in the ordinary and popular sense of that word.

■ It is obvious that the motivating cause of the transactions by the City of Olympia was to turn idle funds into interest-bearing deposits and to deposit those funds so as to receive a maximum return. The City of Olympia therefore

deposited those funds in time deposits which provided a higher return for its deposits. The primary purpose was not to aid the banking institutions, but to benefit the city by availing itself of the maximum return incidental to the deposit of its funds, in a legal depositary as contemplated by Const. art. 11, § 15. This is inconsistent with a *loan* in the ordinary and popular sense. See the extensive discussion of the distinction between loans and deposits made for the benefit of the depositing agency in: *State Land Bd. v. State Fin. Comm'n*, 12 Utah 2d 265, 365 P.2d 213 (1961); *Valley Nat'l Bank v. First Nat'l Bank*, 83 Ariz. 286, 320 P.2d 689 (1958); *Almond v. Day*, 197 Va. 419, 89 S.E.2d 851 (1955); *Bannock County v. Citizens Bank & Trust Co.*, 53 Idaho 159, 22 P.2d 674 (1933).

It was the risk of endangering public funds from the loaning of money in the ordinary and popular sense that the framers of our constitution interdicted, and not the risk of loss from deposits in banking institutions which they had authorized under Const. art. 11, § 15. It would appear that if there are adequate protections for the security of such deposits from loss, the purposes and objectives of Const. art. 8, § 7, would unquestionably be fulfilled.

We now therefore turn our attention to the protection of public deposits in banks by the public funds deposit and investment act, and the statutes protecting such deposits in mutual savings banks and savings and loan associations. In the passing of this legislation, the legislature undoubtedly had in mind the afore-stated purposes and objectives of our constitutional fathers in article 8, section 7.

Laws of 1969, 1st Ex. Ses., ch. 193, p. 1457 (codified in part in RCW 39.58 and RCW 36.29.020), is a comprehensive public funds investment and protection act, applicable to state banks, trust companies and national banking associations located in this state. The act provides a method for deposits, investments, and investment deposits (time deposits) of public funds in qualified public depositaries and establishes an elaborate system to collateralize against loss.

We quote at length the following important sections of the act: RCW 39.58.010.

(1) "Public deposit" means moneys of the state or of any county, city or town, or other political subdivision of the state or any commission, committee, board or officer thereof or any court of the state deposited in any qualified public depositary;

(2) "Qualified public depositary" means a state bank or trust company or national banking association located in this state which receives or holds public deposits and segregates eligible collateral for public deposits as described in RCW 39.58.050;

. . .

(4) "Commission" means the Washington public deposit protection commission created under RCW 39.58.030;

(5) "Eligible collateral" means collateral which is eligible as security for public deposits pursuant to applicable state law;

(6) The "maximum liability" of a qualified public depositary means a sum equal to five percent of the average daily balance of collected funds of all public deposits held by the qualified public depositary during the twelve months immediately preceding the date of any computation of such liability, less any assessments made under this chapter;

(7) "Public funds available for investment" means such public funds as are in excess of the anticipated cash needs throughout the duration of the contemplated investment period;

(8) "Investment deposits" means bank time deposits of public funds available for investment;

(9) "Treasurer" shall mean the state treasurer, a county treasurer, a city treasurer, a treasurer of any other municipal corporation, and the custodian of any other public funds.

RCW 39.58.020.

On and after August 11, 1969, all public deposits in qualified public depositaries, including investment deposits, shall be protected against loss, as provided in this chapter.

RCW 39.58.030.

The Washington public deposit protection commission shall be the state finance committee.

RCW 39.58.050.

(1) Every qualified public depositary shall at all times maintain, segregated from its other assets, eligible collateral having a value at least equal to its maximum liability under this chapter. Such collateral may be segregated by deposit in the trust department of the depositary or in such other manner as the commission approves and shall be clearly designated as security for the benefit of public depositors under this chapter. (2) Collateral eligible as security shall be valued at face value or market value as determined by the commission. (3) The depositary shall have the right to make substitutions of eligible collateral at any time. (4) The income from the assets which constitute segregated collateral shall belong to the depositary bank without restriction.

RCW 39.58.060.

When the commission determines that a loss has occurred, it shall as soon as possible make payment to the proper public officers of all funds subject to such loss, pursuant to the following procedures: (1) For the purposes of determining the sums to be paid, the supervisor of banking or receiver shall, within twenty days after issuance of a restraining order or taking possession of any qualified public depositary, ascertain the amount of public funds on deposit therein as disclosed by its records and the amount thereof covered by deposit insurance and certify the amounts thereof to the commission and each such public depositor; (2) within ten days after receipt of such certification, each such public depositor shall furnish to the commission verified statements of its deposits in such depositary as disclosed by its records; (3) upon receipt of such certificate and statements, the commission shall ascertain and fix the amount of such public deposits, net after deduction of any deposit insurance, and *assess the same against all then qualified public depositaries, as follows: First, against the depositary in which the loss occurred, to the extent of the full value of collateral segregated pursuant to this chapter; second, against all other then qualified public depositaries in proportion to their then maximum liability;* (4) assessments made by the commission shall be payable on the second busi-

ness day following demand, and in case of the failure of any qualified public depositary so to pay, the commission shall forthwith take possession of the eligible collateral segregated by such depositary pursuant to this chapter and liquidate the same for the purpose of paying such assessment; (5) upon receipt of such assessment payments, the commission shall reimburse the public depositors of the depositary in which the loss occurred to the extent of the depositary's net deposit liability to them.

(Italics ours.)
RCW 39.58.130.

A treasurer as defined in RCW 39.58.010 is authorized to deposit in investment deposits in a qualified public depositary any public funds available for investment and secured by collateral in accordance with the provisions of this chapter, and receive interest thereon. The authority provided by this section is additional to any authority now or hereafter provided by law for the investment or deposit of public funds by any such treasurer: *Provided,* That in no case shall the deposit or deposits of public funds by any such treasurer in any one bank or trust company exceed at any one time in the aggregate the total of the capital, surplus, and undivided profits of such bank or trust company.

Further sections in the act establish additional regulations for the protection of public deposits.

By this collateralizing guarantee system, as above set forth, every bank in the state of Washington in which public funds are deposited, except mutual savings banks and savings and loan associations, participates in the guarantee against the loss of those funds to the extent as these statutes provide. It would appear that this guarantee is so vast, from the large number of banks involved, that the protection against loss of public funds in bank deposits, coupled with federal deposit insurance, is virtually absolute.

Mutual savings banks are regulated under provision of RCW Title 32. RCW 32.12.100 of this title authorizes deposits or investments of public funds and provides:

Any funds of the state and of any municipal corpora-

tion, taxing district, political subdivision, or political entity thereof, and any funds held in trust by or under the management of any of the above may be deposited or invested in a mutual savings bank.

*All the deposits or investments must be fully insured by the federal deposit insurance corporation.*

(Italics ours.)

Savings and loan associations are similarly controlled under RCW Title 33, which authorizes governmental investments under RCW 33.52.010:

Any funds of the state, the counties, cities, towns, municipal corporations, taxing districts, political subdivisions, and political entities of every kind, or any funds held in trust by or under the management of any such entity, which are available for investment, may be invested in savings and loan associations organized under either federal or state law, which are doing business in this state: *Provided, That the investment of any one fund in any one savings and loan association shall not exceed the amount which is insured by the federal savings and loan insurance corporation.*

This section shall not apply to the permanent school fund.

(Italics ours.)

Time deposits of municipal funds not needed for immediate expenditure, are also authorized by RCW 36.29.020, in mutual savings banks, and savings and loan associations, to the extent of their maximum coverage by federal deposit insurance.

The protection against loss of public deposits in these mutual savings banks and savings and loan associations is therefore complete and absolute.

The extensive provisions promulgated and enacted by our legislature now for the security and protection of deposits of public funds in banks, mutual savings banks and savings and loan associations would conceivably have been difficult for our constitutional fathers to imagine in 1889. To now say that by their intentions to protect against the risk of loss from loans in Const. art. 8, § 7, they intended to

prohibit deposits in a legal depositary, with the extensive protection now afforded, would be totally inconsistent with their purposes and objectives.

*In summary:* We are satisfied that, by the prohibition against loans by a municipality in Const. art. 8, § 7, it was never intended to include deposits in banking institutions which, in the case of banks, are now protected against loss, substantially by the credit of the United States government, through the Federal Deposit Insurance Corporation, supplemented by extensive collateral protection arrangements; which, in the case of mutual savings banks, are now fully protected by the Federal Deposit Insurance Corporation; and which, in the case of savings and loan associations, are now fully protected by the Federal Savings and Loan Insurance Corporation.

We are further satisfied that the purposes and objectives of the framers of our constitution in article 8, section 7, were the security and protection of public funds, and that the interdiction was against the risk of loans as known in their ordinary and popular sense and not a debtor-creditor relation arising from the depositing of funds in a legal depositary, which the constitutional fathers directed and, in effect, approved in Const. art. 11, § 15. We see no distinction between an ordinary deposit and a time deposit in the context and purpose of Const. art. 8, § 7, and as considered with Const. art. 11, § 15. In either instance a debtor-creditor relationship exists.

We hold that the challenged statutes, authorizing time deposits of public funds, are not in derogation of Const. art. 8, § 7.

The plaintiff argues, however, that the case of *Aberdeen v. National Sur. Co.,* 151 Wash. 55, 275 P. 62 (1929), is controlling in support of his contention that a time deposit is a prohibited loan.

The *Aberdeen* case is to be distinguished. The statute in effect at that time, Rem. Comp. Stat. § 5572, required the banks to file surety bonds in the maximum amount of the deposits made by municipalities, which bonds were condi-

tioned by the statute for the *prompt payment thereof on checks duly drawn by the treasurer*. The real question before the court was set forth at pages 57-58:

> The real question in this case is whether or not funds placed by the treasurer in a bank on a time certificate of deposit, drawing interest, and not subject to check, are protected by depositary bonds given pursuant to the above quoted statute.

We stated at page 60:

> While it is true that universal banking usage and custom generally recognize that interest-bearing time deposits are transactions peculiar to the banking business, and are not, perhaps, commonly understood and altogether treated as loans, yet, *in this case the statute provides* (and the conditions of the bonds follow the statute) *for the "prompt payment thereof on checks duly drawn by the treasurer."* This money, by the express terms of the instrument evidencing its receipt by the bank, was not subject to check or withdrawal at the time the bank closed its doors.

(Italics ours.) Other language in the case upon which the plaintiff relies was not necessary for the decision and is obiter dictum.

The *Aberdeen* case was decided upon a statute which required the posting of bonds by the banks guaranteeing prompt payment on checks drawn by the treasurer and which did not authorize time deposits. Unlike the present case, there were no statutes which specifically authorized and regulated deposits of public funds in time deposits and protected those deposits at all times. The case, therefore, is not dispositive of the issues before us at this time.

We next turn to the plaintiff's contention that the statutes and the City of Olympia's deposit of public funds in a savings and loan association, authorized thereunder, violate that part of Const. art. 8, § 7, which provides that no municipal corporation shall "become directly or indirectly the owner of any stock in or bonds of any association, company or corporation." The plaintiff claims that a depositor in a savings and loan association purchases a proprietary inter-

est in the association itself which, in essence, is the same as a corporate shareholder. This assertion, however, overlooks the nature of the transaction and the resulting relationship of the parties thereto.

In the case before us the City of Olympia, by virtue of its deposit, did not make a permanent contribution to capital as does a purchaser of stock. Unlike an investor in corporate stock, the city can withdraw its deposit and earnings, subject to the required notice and time provisions of the association, and the interest which the city holds is not assignable under our statutes as is an ordinary stock certificate. Additionally, while the city did receive certain voting and other membership privileges as a result of its deposit, these were purely incidental to the purpose for the transaction, and were in no way a moving consideration for the deposit.

It is well established that this court recognizes a distinction between ordinary corporate shareholders and persons designated as shareholders under our savings and loan association act (RCW Title 33). *State ex rel. Wicks v. Puget Sound Sav. & Loan Ass'n,* 8 Wn.2d 599, 113 P.2d 70 (1941); *Rummens v. Home Sav. & Loan Ass'n,* 182 Wash. 539, 47 P.2d 845 (1935). In *State ex rel. Wicks v. Puget Sound Sav. & Loan Ass'n, supra,* we said that the relation of shareholders in savings and loan associations under our act is *sui generis.* Furthermore, we have expressly held that depositors in savings and loan associations are not investors in corporate stock. In *Rummens,* we stated at page 541:

> While the members of savings and loan associations may sometimes be referred to as stockholders, they are depositors rather than investors in corporate stock. *Aberdeen Savings & Loan Ass'n v. Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232; *Gostina v. Whitham,* 180 Wash. 165, 39 P.2d 381.

We hold, therefore, that the deposit of public funds by the defendant, City of Olympia, in a savings and loan asso-

ciation, does not constitute a purchase of stock in a private corporation in violation of Const. art. 8, § 7.

The judgment of the trial court is affirmed.

HAMILTON, C.J., FINLEY, J., and RYAN, J. Pro Tem., concur.

FINLEY, J. (concurring specially)—I concur in and have signed the majority opinion. However, I wish to make it quite clear that I believe that the result reached by the majority must rest upon a so-called liberal or functional, rather than a so-called literal or "strict constructionist," interpretation of Const. art. 8, § 7 and the word "loan" used therein. Whether characterized as liberal or functional, or as literal or strict, either approach or method of interpretation is a traditional and recognized function of the judiciary in our Anglo-American system of jurisprudence. Also, what is often recognized or perhaps tacitly conceded, but usually de-emphasized, is the fact that given these two legitimate approaches or methods of interpretation, there is a judicial choice—a legitimate and proper one—which *must* be made by judges in resolving problems of statutory or constitutional interpretation. Straightforward recognition that there is a choice of approach or method of interpretation, rather than dissembling, seems to me *the essence of judicial responsibility and judicial self-restraint.*

In the case before us, I believe that the time deposits, in the literal or strict sense of the word, must be considered loans because they are characterized by (1) the payment of interest by the bank for use of the money, and (2) the depositor's knowing and intentional loss of his right to the funds for a fixed period of time. I can conceive of no basis upon which the nature of such deposits can be meaningfully distinguished from that of the loans which the bank itself makes to borrowers, using the funds obtained from time deposits made with it.

However, I believe that the exact words of the constitution should not be strictly and restrictively construed inconsistently with the probably underlying or basic intent of

the drafters and contrary to a commonsense accommodation to the needs of the times.

I therefore concur in the majority opinion, not because I feel that the time deposits in question are not "loans" within the strict sense of that word, but because I believe that the majority opinion is persuasively clear in demonstrating (1) that the framers of the constitution would not have prohibited the time deposits under the circumstances in this case if they had been confronted with the problem, and (2) that the various safeguards surrounding the time deposits here in question admirably serve and are consistent with the purpose underlying Const. art. 8, § 7; namely, the integrity and protection of public funds.

I must also register my disagreement with the approach and analysis in the dissenting opinion by Wright, J. That approach and analysis seems to me to be an oversimplification of (1) the problem involved, and (2) the very nature of the judicial process. I am concerned because this seems an abrogation of responsibilities of the appellate judicial function as I personally understand and regard such matters.

HALE, J. (concurring in the result)—I concur in the result but would add that in adopting Const. art. 8, § 7, the people of this state had much more in mind than simply promoting a safe depositary for public moneys. The language of the provision speaks directly against the giving or lending of public money to any persons, corporations or associations under all circumstances and conditions except for the support of the poor and infirm:

> No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

This provision of the constitution, I think, admits of no exceptions save for the poor and infirm and must be ap-

plied categorically even though the contemplated loans or investments be well secured and exceptionally safe.

Nor was Const. art. 8, § 7, adopted as the court suggests simply to prevent the lending of public moneys to the railroads. To the contrary, it was and is expressly aimed at the use of public money by any private entity for private purposes. It is directed against the use of public money for political favoritism, preferment and manipulation; it is aimed at preventing or curtailing the private economic enhancement of persons and corporations by the employment of public funds for private purposes. It is designed to protect the public purse from private spending. The prohibition in the constitution of the use of public funds for private purposes, as I see it, is directly aimed at particular forms of graft, corruption, favoritism and special privilege in politics and government, for it lays down an inexorable principle that anyone standing for public office who openly or tacitly promises to make any part of the public treasury available for private profit, use, manipulation or investment will be unable to keep such promises lawfully.

I do not, however, consider the time deposits as described in this action, and subject as they are to withdrawal at will without substantial penalty when deposited in a bank, to constitute such a prohibited lending or giving of public money or credit to the depositary bank, and accordingly would affirm on this narrow ground.

Rosellini, J., concurs with Hale, J.

Wright, J. (dissenting)—The constitution (article 8, section 7) provides:

CREDIT NOT TO BE LOANED. No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

We are concerned with the question of whether or not

the placing of the funds of respondent, City of Olympia, in financial institutions on time deposits and the placing of funds in savings and loan associations, is a violation of this provision.

The majority takes much time discussing the safety of the investment. The wisdom of the provision was a decision for the framers of the constitution. We cannot substitute our judgment for theirs.

If the constitutional language is clear and unambiguous, interpretation by the courts is improper; . . .

*State ex rel. O'Connell v. Slavin,* 75 Wn.2d 554, 557, 452 P.2d 943 (1969).

Furthermore, we cannot construe the constitution in such a way as may seem desirable, ". . . even though the circumstances may have so changed as to make a different rule seem desirable." 6 R.C.L. 46. See also, *State ex rel. Lemon v. Langlie,* 45 Wn.2d 82, 273 P.2d 464 (1954); *State ex rel. Banker v. Clausen,* 142 Wash. 450, 253 P. 805 (1927); *State ex rel. Munro v. Todd,* 69 Wn.2d 209, 417 P.2d 955 (1966).

The constitution itself contains a clear direction in that article 1, section 29 provides:

The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise.

The language of the constitution is clear in prohibiting the loaning of public funds.

We decided the question of whether a time deposit is a "loan" in *Aberdeen v. National Sur. Co.,* 151 Wash. 55, 275 P. 62, 65 A.L.R. 794 (1929), wherein we held such a transaction to be a loan and prohibited by the constitution.

No change has been made in the constitution in the 43 years since that decision. There is no reason to depart from the rule there laid down.

The other question is whether the placing of funds in a savings and loan association violates the portion of Const. art. 8, § 7, which says:

or become directly or indirectly the owner of any stock in or bonds of any *association*, company or corporation.

(Italics ours.)

RCW 33.20.010 provides in part:

Each member having savings or deposits in an association shall have a proportionate proprietary interest in its assets or net earnings subordinate to the claims of its other creditors.

RCW 33.20.110 provides:

An association shall not receive savings upon which a stipulated rate of dividend shall be payable. Except as otherwise expressly provided or authorized in this title, all savings shall share proportionately in all net earnings and all losses of the association.

Members have a vote as provided in RCW 33.20.010 and each member has at least one vote, and one additional vote for each $100 of stock owned.

It will thus be seen, whoever places funds in a savings and loan association has the incidents of the ownership of corporate stock. Such an investment of public funds is in violation of article 8, section 7.

I would reverse.

STAFFORD, J., concurs with WRIGHT, J.