NORTHERN INDIANA BANK AND TRUST COMPANY and Indiana Bankers Association, Inc., Appellants (Plaintiffs Below),

v.

STATE BOARD OF FINANCE OF INDIANA; Theodore L. Sendak, as Attorney General of the State of Indiana; State Board of Accounts of Indiana; Kenneth R. Beesley, as Chief Examiner of the State Board of Accounts; Charles W. Stout, as Deputy Examiner of the State Board of Accounts; and Richard L. Worley, as Deputy Examiner of the State of Board of Accounts; the First Federal Savings and Loan Association of Valparaiso; and the Savings and Loan League of Indiana, Inc., Appellees (Defendants Below).

No. 1182S449.

Supreme Court of Indiana.

Dec. 20, 1983.

James L. Jorgensen, Hoeppner, Wagner & Evans, Valparaiso, Donald F. Elliott, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., David Michael Wallman, Deputy Atty. Gen., Indianapolis, Quentin A. Blachly, Blachly, Tabor, Bozik & Hartman, Valparaiso, Lewis C. Bose, David R. Day, Bose, McKinney & Evans, Indianapolis, Patrick J. Dougherty, Spangler, Jennings, Spangler & Dougherty, Valparaiso, for appellees.

HUNTER, Justice.

This is an appeal from a declaratory judgment action in which the trial court held that 1980 Indiana Acts Public Law 15 (P.L. No. 15) was constitutional.

P.L. No. 15 amended Ind.Code § 4–10–8–1 (Burns 1982 Repl.), Ind.Code § 5–13–1–2 (Burns 1983 Repl.), and Ind.Code § 5–13–1–6 (Burns 1983 Repl.), and permitted the State and municipal corporations to deposit public funds in deposit-type savings associations.[1] Deposits are limited to the maximum amount insured by the Federal Savings and Loan Insurance Corporation (FSLIC). In addition, the amount that may be deposited cannot exceed the amount determined as if the savings association were a depository under the Depository Act of 1937, Ind.Code § 5–12–1 et seq. (Burns 1983 Repl. & 1983 Supp.).

Appellants contend this Act violates Art. XI, § 12 of the Indiana Constitution, which states:

"The State shall not be a stockholder in any bank, after the expiration of the present bank charter; nor shall the credit of the State ever be given, or loaned, in aid of any person, association or corporation; nor shall the State hereafter become a stockholder in any corporation or association."

The trial judge held that a deposit of public funds in savings associations did not result

---

**1.** Savings associations include both state chartered building and loan and federally chartered savings and loan associations.

in the State becoming a stockholder of a corporation or association within the meaning of Art. XI, § 12. The trial judge also held that a savings association did not have to qualify as a depository under the Depository Act of 1937. The judge thus held that P.L. No. 15 was a valid legislative enactment. We granted transfer pursuant to Ind.R.App.P. 4(A)(10), since there is a substantial question of law of great public importance. We now affirm the trial court.

## I.

The starting point in determining the validity of P.L. No. 15 is our principle that an act of the legislature has a strong presumption of constitutionality. *State v. Clark*, (1966) 247 Ind. 490, 217 N.E.2d 588. The act must be clearly subversive to the constitution before it will be declared invalid. *Short v. Texaco, Inc.*, (1980) Ind., 406 N.E.2d 625; *Noel v. Ewing*, (1857) 9 Ind. 37. As such, all doubts must be resolved in favor of the validity of the act. *Short v. Texaco, Inc.; State v. Clark.* We must also determine the intent of our constitutional framers, in order that we may ascertain what the particular constitutional provision was designed to prevent. *See State v. Nixon*, (1979) 270 Ind. 192, 384 N.E.2d 152.

Our present constitution was adopted in 1850. Two major issues in the years prior to 1850 were directly responsible for Art. XI, § 12. The first was the banking issue. In 1834, our legislature chartered the State Bank, which enjoyed a virtual monopoly in the banking business within Indiana. 1834 Laws of Indiana, Chapter VII. The legislature authorized the State to buy fifty percent of the bank's stock and give the bank the power to issue currency, redeemable in specie. Even though this bank was moderately successful, there was considerable opposition to its existence. Members of the opposition generally favored a system of "free banks", in which the State played no active part. Debate on this issue occupies several hundred pages in the Report on the Debates and Proceedings of the Convention for the Revision of the Constitution. (Indianapolis, 1850) [hereinafter Debates]. Several resolutions were offered, including the following by a delegate favoring free banks:

"*Resolved* 1st. That no State bank shall hereafter be created, nor shall the State, directly or indirectly, ever become a stockholder in any incorporation or association, created for the purpose of issuing paper money of any description; nor shall the State give or loan her credit, in aid of any individual or incorporation, for banking purposes."

Debates, p. 52. This resolution was responsible for the language in Art. XI, § 12 which now states that "The State shall not be a stockholder in any bank, after the expiration of the present bank charter ...." Those supporting a system of free banks prevailed. The intent of our framers in adopting this clause of Art. XI, § 12 was to prevent the State from re-chartering the State Bank after its initial charter expired in 1857. This clause does not prevent the State from depositing public funds in savings associations.

Appellants, however, have placed considerable emphasis on the language in Art. XI, § 12 that states "nor shall the State hereafter become a stockholder in any corporation or association." This language was a result of the second major issue of the pre-1850 period, the internal improvement system. In 1836, the Indiana legislature passed the Internal Improvement Act, which provided for the construction of canals, turnpikes and railroads within the state. 1836 Laws of Indiana, Chapter II. This Act established the Board of Internal Improvement and authorized the Board to borrow up to ten million dollars to finance internal improvements. It was the hope of the legislature that new canals, turnpikes and railroads would provide access to markets for Indiana's farmers and thus spur our economy. Unfortunately, the entire internal improvement system failed badly, and many of the projects were never finished.

The State, during this period, had taken a very active part in the improvements.

This was especially true of the State Bank, which extended a substantial amount of credit to private corporations. More importantly, however, the State Bank began to speculate in these corporations by purchasing their stock. The State expected not only to benefit from a new system of internal transportation, but also to make a substantial return on their investments. Rather than make money, the State lost it. By 1839 the State was nearly bankrupt. Economic repercussions from all of this continued to be felt at the time of the constitutional convention in 1850. It was this situation, where the State acted as a speculative partner, that lead to the language in Art. XI, § 12 now relied upon by appellants to find P.L. No. 15 unconstitutional.

We hold that P.L. No. 15 violates neither the spirit nor the letter of that portion of Art. XI, § 12 that prohibits the State from being a stockholder in a corporation. This clause was made part of Art. XI, § 12 to prevent the State from ever again being a partner in speculation. Several delegates to the convention expressed their concern over the State speculating in private corporations. Thus, the delegate offering an amendment containing the present constitutional language stated that "I hope the great State of Indiana will no longer be found engaged in supporting and upholding as a partner, what I call a swindling machine." Debates, p. 651. During the debate on this issue another delegate stated:

> "What right has the State of Indiana to become a partner with any speculation? She has no more right to do this than she has a right to form a regular co-partnership with a merchant or manufacturer, in any speculation looking to a profitable result. I hope this Convention will take such action, upon this subject, as will forever silence the presumption that the State of Indiana may become a partner in any money making enterprise."

Debates, p. 652. These comments, as well as the comments of other delegates during the course of the convention, show that the purpose of the last clause in Art. XI, § 12 was to prevent the State from being a speculative partner, as it had been in the internal improvement system. Speculation, by its nature, involves "[e]ngaging in hazardous business transactions, or investing in risky securities or commodities, with the hope of an unusually large profit." BLACK'S LAW DICTIONARY, 1255 (5th Ed. Rev.) The State, if it chooses to deposit money in savings associations, can do so only up to the amount insured by the FSLIC. The State is not engaging in hazardous transactions, and it does not, by virtue of a deposit, become a speculative partner. The type of action allowed under P.L. No. 15 is not the type of action our framers intended to prohibit.

■ Further, the letter of this clause is not violated. Appellants argue that because of the nature of savings associations, where depositors are given certain rights not given to normal bank depositors, the State would become a stockholder in a corporation. We disagree.

Savings associations may be organized under Indiana law as building and loan associations. Ind.Code § 28–1–4–1 to –17 (Burns 1973 & 1983 Supp.); Ind.Code § 28–4–1–1 to –8 (Burns 1973 & 1983 Supp.), or under federal law as savings and loan associations, 12 U.S.C. § 1461 et seq. (1982). Since 1969, most state and federal laws concerning savings associations were changed to allow savings associations to operate as deposit associations, rather than share account associations. Ind.Code § 28–4–1–4 (Burns 1973). P.L. No. 15 allows the State to deposit money only in deposit type savings associations.

As the appellants have pointed out, a depositor in a savings association is given certain rights that a stockholder also possesses. The holder of savings deposits is granted a right to vote as a member of the association, Ind.Code § 28–4–1–4 (Burns 1973), and the right to share in the remaining assets of the association upon liquidation. Ind.Code § 28–4–1–5 (Burns 1973). There are, however, significant differences between a depositor in a savings association and a stockholder in a corporation. First, while a depositor is granted the right

to vote, this right is severely restricted and is of much less importance than in the case of a stockholder. For a member of a building and loan association, for example, the maximum number of votes per account is fifty. Ind.Code § 28–1–5–8(g) (Burns 1983 Supp.). In a savings and loan, the maximum number of votes is four hundred. 12 C.F.R. 544.1 (1983). Second, a depositor in a savings association is guaranteed a fixed return in the form of interest on the deposit. A shareholder's return is based upon the profitability of the corporation. He may or may not receive any return on his investment.

The third and most important distinction is that buying stock results in a permanent, non-withdrawable contribution to the capital of the corporation. The only way to reclaim the investment is to sell the stock to a third person. Simply stated, this may result in a gain or loss depending on the market for the stock. Deposits in a savings association may be withdrawn *on demand*, subject to some time restrictions. *See* Ind.Code § 28–4–1–5 (Burns 1973).

The federal government has also recognized the difference between a depositor and a stockholder. 12 U.S.C. § 24, Seventh (1982) prohibits a national bank from "the purchase ... for its own account of any shares of a corporation". Despite this language, the General Counsel of the Office of the Comptroller of the Currency has taken the position that a national bank can deposit money in a savings association:

> "Under a savings contract similar to those offered by savings and loan associations, the saver is the possessor of legal rights and interests uniquely different from the mere equity interest possessed by a holder of a corporate stock. Particularly incompatible with the concept of corporate stock is the saver's right to withdraw his money. Savings accounts in savings and loan associations have a fixed dollar value. Precisely the inverse is true of corporate stock. The reliable value of corporate capital stock, which is

non-withdrawable and which can be liquidated only by sale to another party, reflects the never ending fluctuations of the law of supply and demand."

Opinion of General Counsel Office of Comptroller of Currency (Oct. 11, 1977).

A case very similar to the present controversy is *Graham v. City of Olympia*, (1972) 80 Wash.2d 672, 497 P.2d 924. The Washington legislature enacted a statute that authorized the deposit of public funds in banks, mutual savings banks, and savings associations. Washington's constitution, however, contained a provision prohibiting the State from becoming "directly or indirectly the owner of any stock in or bonds of any association, company, or corporation." Washington Const., Art. 8, § 7. The Supreme Court of Washington, after noting the distinctions between a depositor and a stockholder, held that the deposit of public funds in a savings association by the City of Olympia did not constitute a purchase of stock in violation of their constitution.

Finally, we recognize that the courts in Nebraska and Michigan have reached results different from what we now hold. *See Nebraska League of Savings and Loan Associations v. Mathes*, (1978) 201 Neb. 122, 266 N.W.2d 720; *Michigan Savings and Loan League v. Michigan Finance Commission*, (1958) 347 Mich. 311, 79 N.W.2d 590. Nevertheless, we feel that in light of Indiana's strong presumption of constitutionality and especially in light of particular historic events that were responsible for Art. XI, § 12, P.L. No. 15 is not unconstitutional.[2]

## II.

Appellants second argument is that, even if P.L. No. 15 is constitutional, public funds cannot be deposited in savings associations unless they qualify as depositories under the Depository Act of 1937, Ind.Code § 5–12–1 et seq. (Burns 1983 Repl. & 1983 Supp.). Under the language of the Act,

---

**2.** Since we hold that P.L. No. 15 is not unconstitutional, it is unnecessary for us to decide, as

the appellants suggest, that the doctrine of severability cannot be applied to P.L. No. 15.

however, a savings association can never be a depository, since "depository" is defined as "bank or trust companies constituted as depositories of public funds ...," Ind.Code § 5–12–1–1(g) (Burns 1983 Supp.), and the definition of "bank or trust companies" does not include savings associations. Ind.Code § 5–12–1–1(f) (Burns 1983 Supp.).

 It is a rule of statutory interpretation that courts will not presume the legislature intended to do a useless thing or to enact a statute that is a nullity. *State ex rel. Boger v. Daviess Circuit Court,* (1959) 240 Ind. 198, 163 N.E.2d 250; *Combs v. Cook,* (1958) 238 Ind. 392, 151 N.E.2d 144. Yet, appellants argument would render P.L. No. 15 a nullity, since state and local governments would be unable to exercise the authority to deposit funds in savings associations, even though P.L. No. 15 allows them to do so. Such an interpretation would defeat the intent of the legislature, which was to liberalize the power of state and local government to invest public funds, and we must always endeavor to follow the intent of the legislature. *Walton v. State,* (1980) 272 Ind. 398, 398 N.E.2d 667.

Therefore, we hold that under P.L. No. 15, deposits of public funds may be made in savings associations even though they are not depositories under the Depository Act of 1937.

We therefore grant transfer, and the decision of the trial court is affirmed.

Affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., not participating.