**In re Virginia Sue GARVIN, Debtor.**

**William J. TABOR, Plaintiff,**

**v.**

**Virginia Sue GARVIN and the Administrator and Trustees of the Westinghouse Pension Plan, Defendants.**

**Bankruptcy No. 90–80473.
Proc. No. 90–8059.**

United States Bankruptcy Court,
S.D. Indiana,
Terre Haute Division.

July 26, 1991.

William J. Tabor, for plaintiff.

Randall Johns, for defendants.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

This matter comes before the court on PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ARGUMENT THEREON. A hearing was held on the motion on May 6, 1991, after which the court took the matter under advisement. The court now grants the Plaintiff's motion for the reasons stated below.

## JURISDICTION

Pursuant to 28 U.S.C. § 157(a) and the October 7, 1988 "Designation of a Bankruptcy Judge for Service in Another District within the Circuit," issued by the Judicial Council of the Seventh Circuit, assigning the undersigned to hear certain cases in the Terre Haute Division of the Bankruptcy Court for the Southern District of Indiana, this case has been referred to this court for hearing and determination. After reviewing the record, the court determines that the matter before the court is a core proceeding within the meaning of § 157(b)(2)(B). This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52 made applicable to bankruptcy proceedings by Bankruptcy Rule 7052.

## FACTS

Debtor filed her voluntary petition under Chapter 7 of the Bankruptcy Code on June 19, 1990. On November 16, 1990, the Trustee filed COMPLAINT FOR ACCOUNTING AND TURNOVER OF ASSETS, requesting turnover of the funds in the Debtor's pension plan. Although property of the estate, the Debtor had claimed her entire interest in the Westinghouse Pension Plan as exempt pursuant to Indiana Code § 34-2-28-1(a)(6) and refused to request turnover of the funds from the plan trustee.

The Debtor has more than 18 years of credited service as a participant in the Westinghouse Pension Plan (the "Plan"). The Plan is qualified under the Internal Revenue Code and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. As of September 1, 1990, the Debtor had an unqualified and unrestricted right to demand distribution of her interest in the Plan which totalled $11,297.19. The Debtor seeks to discharge unsecured debt in an amount that exceeds $24,000.00.

## DISCUSSION

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); accord Arkwright–Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co., 818 F.2d 591, 593 (7th Cir.1987). Rule 56 of the Federal Rules of Civil Procedure is made applicable to bankruptcy adversary proceedings through Bankruptcy Rule 7056. All the relevant facts are undisputed or admitted by the Debtor. Therefore, judgment can be rendered as a matter of law.

Two issues were raised by the Trustee in his motion. They are:

1. Whether the exemption statute regarding pension plans, Ind.Code § 34–2–28–1[a](6) is pre-empted by ERISA, 29 U.S.C. § 1144(a).

2. Whether Ind.Code § 34–2–28–1[a](6) is in violation of either the United States Constitution or the Indiana Constitution.

The Trustee argued that because the Supreme Court has given the ERISA pre-emption clause such a broad interpretation, Ind.Code § 34–2–28–1(a)(6) is pre-empted by ERISA. In the alternative, the Trustee argued that Ind.Code § 34–2–28–1(a)(6) was in violation of both the U.S. Constitution and the Indiana Constitution as a state law which impairs the obligation of contracts. Neither of the Defendants filed a brief in response to the Trustee's motion.

The court turns first to the question of pre-emption because if the Indiana statute is pre-empted by ERISA the court will not have to decide the constitutional question. The ERISA pre-emption clause states:

(a) Supersedure; effective date. Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)] and not exempt under section 4(b) [29 U.S.C. § 1003(b)].

29 U.S.C. § 1144(a) (1988). If Ind.Code § 34–2–28–1(a)(6) "relates to" any qualified employee benefit plan, then it is pre-empted by ERISA. Ind.Code § 34–2–28–1(a)(6) states:

(a) The following property of a judgment debtor domiciled in Indiana is not subject to levy or sale on execution or any other final process from a court, for a judgment founded upon an express or implied contract or a tort claim:

(6) An interest the judgment debtor has in a pension fund, a retirement fund, an annuity plan, an individual retirement ac-

count, or a similar fund, either public or private.

Ind.Code § 34–2–28–1(a)(6) (Supp.1990).[1]

The Supreme Court has had several opportunities to interpret the ERISA pre-emption clause. The Court said that "... Congress used the words 'relate to' in § 514(a) [29 U.S.C. § 1144(a)] in their broad sense." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900–01, 77 L.Ed.2d 490 (1983). As such, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. In *Shaw,* the Court found that the New York laws in question did relate to ERISA as they created obligations that employee benefit plans must meet.

In 1988, the Court had another opportunity to examine the scope of the pre-emption clause in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The statute in question in *Mackey* was the Georgia garnishment statute. The garnishment statute had a provision which barred the garnishment of certain ERISA funds. The Court found that it was pre-empted because it made reference to ERISA. *Mackey,* 486 U.S. at 830, 108 S.Ct. at 2185–86. The Court made clear that a state law will not be saved from pre-emption even if it is created to effectuate ERISA's purposes. *Mackey,* 486 U.S. at 829, 108 S.Ct. at 2185. The question as to whether the whole garnishment statute was pre-empted was also presented to the Court. The Court found that it was not pre-empted as Congress had not intended to forbid state law mechanisms of executing judgments against ERISA welfare benefit plans. *Mackey,* 486 U.S. at 831, 108 S.Ct. at 2186.

The Supreme Court continued its broad interpretation of the pre-emption clause in *FMC Corp. v. Holliday,* — U.S. —, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). The Court stated that Congress "did not mean to pre-empt only state laws specifically de-

---

**1.** Indiana has elected under 11 U.S.C. § 522(b) to provide a debtor domiciled in Indiana only those exemptions provided by Indiana law. See Ind.Code § 34–2–28–0.5 (1988).

signed to affect employee benefit plans." *FMC Corp.*, 111 S.Ct. at 408. The Court found that the pre-emption clause would apply when plan administrators would be subject to conflicting state regulations. *FMC Corp.*, 111 S.Ct. at 408.

> Thus, where a "patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation," we have applied the pre-emption clause to ensure that benefit plans will be governed by only a single set of regulations.

*FMC Corp.*, 111 S.Ct. at 408.

Although the Supreme Court has never dealt directly with the question presented to this court, several other bankruptcy courts have. The courts are split on whether ERISA pre-empts exemption statutes dealing with pension plans. The majority of courts have found the statute pre-empted where it specifically makes reference to ERISA. *See In re Martin*, 115 B.R. 311 (Bankr.D.Utah 1989), *aff'd, In re Fullmer*, 127 B.R. 55 (D. Utah 1991). However, the court in *In re Volpe*, 100 B.R. 840 (Bankr.W.D.Tex.1989), *aff'd*, 120 B.R. 843 (W.D.Tex.1990), rejected the view the majority had taken. In affirming the bankruptcy court, the district court said:

> A review of Section 42.0021 indicates that it merely defines a certain category of exempt property. It does not attempt to regulate the terms and conditions of an employee benefit plan; nor does it affect the relationship between the principal ERISA entities.

*In re Volpe*, 100 B.R. at 848. Even though that statute made reference to ERISA, the court found that it was not pre-empted.

█ No other court has had to interpret as broad an exemption statute as Ind.Code § 34–2–28–1(a)(6). However, the relevant question is no different for this court than for any other court: Does the statute have reference to or a connection with an ERISA plan? Clearly, the statute makes no reference to ERISA whatsoever. Therefore, the court must determine whether it has a connection with an ERISA plan. This is a less definite standard and one which the Su-

preme Court has not dealt with directly. However, the court can ascertain several factors from the Supreme Court's decisions in this area that can assist in determining whether a law has a connection with an ERISA plan.

1. Is this an area that is typically within the province of the state?
2. Does the law create additional obligations for the plan trustees or administrator?
3. Will the plan be subject to conflicting state regulations?

The answers to those questions in this case lead to the conclusion that Ind.Code § 34–2–28–1(a)(6) does not have a connection with an ERISA plan. First, it has typically been within the province of the state to create exemptions of real and personal property. In fact, the Indiana Constitution, along with many other states constitutions, has provided for the creation by the legislature of exemptions. *See* Indiana Constitution, Art. I, § 22. Second, this statute does not create any additional obligations that a plan would have to accommodate. Last, the plan will only be subject to conflicting regulation insofar as not every state will provide an exemption for interests in pensions plans. This, however, will not affect the administration of the plan any more than different garnishment statutes in different states will. Therefore, the court concludes that ERISA, 29 U.S.C. § 1144(a), does not pre-empt Ind. Code § 34–2–28–1(a)(6). The court now turns to the question of the constitutionality of Ind.Code § 34–2–28–1(a)(6).

The Trustee argued that Ind.Code 34–2–28–1(a)(6) was unconstitutional as applied because it violated the contract clause in both the Indiana Constitution, Art. I § 24 and the U.S. Constitution, Art. I, § 10. The contract clause in the U.S. Constitution prohibits a state from passing any law that would impair the obligation of contracts. The Indiana Constitution prohibits the Indiana legislature from doing so. The U.S. Supreme Court recently set forth a three-step analysis to determine whether a law violates the contract clause. The Court stated:

The threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected. Total destruction of contractual expectations is not necessary for a finding of substantial impairment. On the other hand, state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment. In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past. The Court long ago observed: "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them."

If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem. Furthermore, since [*Home Building & Loan Ass'n v.] Blaisdell*, [290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934)], the Court has indicated that the public purpose need not be addressed to an emergency or temporary situation. One legitimate state interest is the elimination of unforeseen windfall profits. The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests.

Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." Unless the State itself is a contracting party, "[a]s is customary in reviewing economic and social regulation, ... courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–13, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569, 580–81 (1983) (cites and footnotes omitted).

One bankruptcy court has dealt with the question of whether an exemption statute violated the contract clause. *See In re Garrison*, 108 B.R. 760 (Bankr.N.D.Okla. 1989) and *In re Ree*, 114 B.R. 286 (Bankr. N.D.Okla.1990). The exemption statute involved was very similar to the one here, although it exempted only tax qualified retirement plans, whereas the Indiana exemption has no such restriction. The court employed the three-step analysis outlined above. The court found that the statute substantially impaired a contractual arrangement. The court noted

that most debtors do not own spare, nonexempt tracts of land or vehicles free and clear, or other species of non-exempt assets, a bank account is often a levying creditor's only realistic hope for execution. The amount of money sheltered in a retirement plan or account can be quite large—even hundreds of thousands of dollars.

*Garrison*, 108 B.R. at 766. The court turned next to the question of public purpose behind the exemption. In the absence of legislative history, the court assumed a legitimate purpose for the exemption. The court assumed that the State's purpose was to encourage and protect savings for support after retirement. *Garrison*, 108 B.R. at 766. The court then turned to the third prong of the analysis; whether the means used were reasonable to effectuate the purpose. The court found that the statute failed the test of reasonableness due to its overbreadth. The court concluded that

th[e] purpose is far exceeded by 31 O.S., supra, § 1(A)(20), which protects virtually anything calling itself a retirement plan regardless of circumstances, and heedlessly demolishes (rather than carefully modifies) a traditional public policy disfavoring self-settled revocable spendthrift trusts. There is no evidence before the Court of what consideration, if any, the Oklahoma Legislature gave to

the drastic effects of this new exemption statute. *Garrison,* 108 B.R. at 768. As such, the court found that the Oklahoma exemption statute violated the contract clause as applied to a creditor who had contracted with the debtor prior to the time the exemption was enacted.

■ The Indiana statute can go through an identical analysis, with virtually the same conclusion. This court agrees with the Oklahoma bankruptcy court that often a bank account is the only non-encumbered asset upon which a creditor can execute. When a debtor can shelter large sums of money by placing them in IRAs, the creditor loses a significant asset from which he can collect an indebtedness. Therefore, the court concludes that the exemption does work a substantial impairment upon those who contracted with a debtor prior to the passage of the exemption. In this case that includes all of Debtor's creditors.

As was the case in Oklahoma, Indiana also has no legislative history to refer to in order to determine the purpose behind the legislation. Like the Oklahoma bankruptcy court, this court is loathe to ascribe an illegitimate purpose to the statute. Therefore, this court concludes, as did the bankruptcy court in Oklahoma, that the legislature's purpose was to promote and protect savings for retirement.

As in the first two steps of the analysis, the court's analysis of the third prong echoes that of the bankruptcy court in Oklahoma. However, the Indiana statute is even more egregious in its overbreadth. As the Trustee pointed out in his brief in support of his motion for summary judgment, "virtually any financial instrument or account that ostensibly provides resources to support retirement needs, or calls itself a retirement fund, would appear to be shielded from creditor process." Plaintiff's Brief in Support of Motion for Summary Judgment, at 8. The exemption has no relationship to amounts needed for support in retirement. Nor does it have any other limiting condition. Unlike the Oklahoma statute, this one does not even have the condition of being tax-qualified.

A debtor could conceivably place nearly all his assets outside the reach of creditors. The statute is simply not reasonably related to the purpose for which it was passed. As such, Ind.Code § 34–2–28–1(a)(6) is unconstitutional under the U.S. Constitution as applied in this case and the Debtor may not use the exemption to shield from the Trustee that which is properly property of the estate.

However, the court's analysis of the constitutionality of Ind.Code § 34–2–28–1(a)(6) is not over. The Indiana Constitution also has a provision which relates specifically to exemptions. Article I, § 22 of the Indiana Constitution states: "The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a *reasonable* amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." (emphasis added). In light of the court's conclusion above regarding the statute's overbreadth, the court feels compelled to examine it with regard to this section of the Indiana Constitution.

No court, either federal or state, has construed this section of the Indiana Constitution. However, this court is as well situated as any other federal court to do so. Two principles of constitutional construction, as set out by Indiana courts, will guide the court's analysis. The first is that the court "must ... determine the intent of our constitutional framers, in order that we may ascertain what the particular constitutional provision was designed to prevent." *Northern Indiana Bank & Trust Co. v. State Bd. of Fin.,* 457 N.E.2d 527, 529 (Ind.1983). The second principle is that the court must presume that the language was chosen carefully and give effect to each word, especially when those words express limitation on a power. *See Hendricks v. Ind.,* 245 Ind. 43, 196 N.E.2d 66 (1964); *Allen v. VanBuren Township,* 243 Ind. 665, 184 N.E.2d 25 (1962), *reh'g den. and mandate mod.,* 243 Ind. 665, 192 N.E.2d 316 (1963); *Chandler v. South Bend Community School Corp.,* 160 Ind.App. 592, 312 N.E.2d 915 (1974).

The court's inquiry regarding this section of the constitution is focused primarily on the word "reasonable", as it appears to be the word of limitation in the section. Therefore, the court turns first to the intent of the framers. In order to do so, the court has reviewed the Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana (1850). The debates do not reveal much about the specific language to which the court is directing its attention. The framers argued at length over several proposed amendments to this section, most of which would have put further restrictions on the legislature. It was clear, however, that the framers only intended it to protect the poor and their families from total financial devastation. Since the Constitutional Debates do not shed particular light upon the specific language adopted, the court must presume that the language was chosen carefully and give effect to *each* word.

As such, the court cannot ignore the use of the word "reasonable" as a limit on that amount of property that may be exempted in order that the debtor "enjoy the necessary comforts of life." The analysis as to whether Ind.Code § 34-2-28-1(a)(6) is reasonable is not unlike the analysis that the court has already gone through to determine whether it was reasonable with regard to its purpose. The answer is also not unlike that above. This statute grants a far greater exemption than is necessary to enable a debtor to enjoy the necessary comforts of life. It has virtually no limitation except that any fund must be or be similar to an IRA, a pension plan, or annuity plan. There is no dollar limit, nor is it tied into that which would be reasonably necessary for the support of the debtor and his family. The statute simply exempts an unreasonable amount of property. This the Indiana Constitution forbids. Therefore, this court finds that Ind.Code § 34-2-28-1(a)(6) is *per se* unconstitutional.

## CONCLUSION

The court grants the Trustee's motion for summary judgment and orders the Defendants to turnover to the Trustee $11,-

297.19. Although Ind.Code § 34-2-28-1(a)(6) is not pre-empted by ERISA, it is unconstitutional as applied, because it violations the contract clause of the U.S. Constitution. Furthermore, it is *per se* unconstitutional as it does not exempt a reasonable amount of property as required by Art. I, § 22 of the Indiana Constitution.

SO ORDERED.